IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **NATIONAL FIRE INSURANCE COMPANY OF HARTFORD**<br>151 N. Franklin Street<br>Chicago, IL  60606<br><br>*and*<br><br>**CONTINENTAL CASUALTY COMPANY**<br>151 N. Franklin Street<br>Chicago, IL  60606<br><br>          **Plaintiffs,**<br>**v.**<br><br>**MORABITO CONSULTANTS, INC.**<br>952 Ridgebrook Rd. Suite 1700<br>Sparks Glencoe, MD  21152<br>(Baltimore County)<br><br>          **Defendant.** | Case No.: 21-cv-01966 |

## COMPLAINT FOR DECLARATORY JUDGMENT

Plaintiffs National Fire Insurance Company of Hartford ("NFICH") and Continental Casualty Company ("CCC") (together, "CNA"), by and though undersigned counsel and for its Complaint for Declaratory Judgment against defendant Morabito Consultants, Inc. ("Morabito") allege as follows:

## NATURE OF THE ACTION

1. This is an action for declaratory judgment pursuant to Rule 57 of the Federal Rules of Civil Procedure and 28 U.S.C. § 2201 *et seq.*

2. CNA seeks a determination of the parties' rights and obligations in connection with primary general liability and umbrella/excess policies issued by CNA to Morabito, a

structural engineering firm, with respect to numerous underlying lawsuits against Morabito arising from the collapse of a Florida condominium (the "Underlying Lawsuits").

## JURISDICTION AND VENUE

3. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) in that there is complete diversity of citizenship between the parties, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

4. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) in that defendant Morabito is a resident of this District and a substantial part of the events or omissions giving rise to CNA's claims occurred in this District.

## PARTIES

5. Plaintiff National Fire Insurance Company of Hartford is an Illinois corporation with its principal place of business located in Chicago, Illinois.

6. Plaintiff Continental Casualty Company is an Illinois corporation with its principal place of business located in Chicago, Illinois.

7. Defendant Morabito Consultants Inc. is a Maryland corporation with its principal place of business located in Sparks Glencoe, Maryland.

## FACTUAL BACKGROUND

**I.    The Underlying Lawsuits**

8. Champlain Towers South (the "Condominium") was a twelve-story beachside residential condominium comprising 136 individual condominium units located in the town of Surfside in Miami-Dade County, Florida.

9. The Champlain Towers South Condominium Association (the "Association") owned, operated, managed, and/or was otherwise responsible for operation and maintenance of the Condominium.

10. On information and belief, in 2018, the Association retained Morabito to provide professional engineering, inspection, and/or oversight services at the Condominium in order to prepare for a mandatory 40-year recertification of the structural integrity of Condominium as required by local codes and regulations. In connection with that retention, Morabito completed an inspection of the Condominium and provided the Association with an October 2018 report that detailed findings and recommendations, along with repair cost estimates.

11. On information and belief, the Association subsequently retained Morabito in June 2020 to provide additional engineering, inspection, and/or oversight services in connection with the Condominium's anticipated recertification, including preparation of a "40-year Building Repair and Restoration" plan with engineering specifications for completing the necessary repairs and restoration work. In connection with that engagement, Morabito provided the Association with an October 2020 memorandum that indicated significant deterioration of concrete near the pool area and elsewhere.

12. Morabito's work on the Condominium was limited to professional engineering services. Morabito did not provide any construction-related services, such as building repair and restoration contracting, to the Condominium. In a public statement Morabito published on its website in June 2021, Morabito stated:

> We are a structural engineering firm with nearly four decades of experience providing professional design and inspection services for a wide range of building structures, from high-rise residential and commercial properties to educational and healthcare facilities… Our firm exclusively provides engineering consulting

services. We do not provide construction-related services, such as building repair and restoration contracting.

13. On June 24, 2021, the Condominium partially collapsed, resulting in the deaths of 98 persons (the "Collapse"). The Collapse also destroyed 55 condominium units and rendered uninhabitable all of the remaining units, which were subsequently demolished during the recovery process.

14. On information and belief, at the time of the building collapse, roof repairs at the Condominium had commenced, but concrete restoration had not yet begun.

15. Surviving owners of units in the Condominium and relatives of the deceased have begun to bring lawsuits seeking damages on account of the Collapse and naming Morabito, the Association, and various other parties as defendants. Morabito is named at least the following eight individual lawsuits filed in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (collectively, the "Underlying Lawsuits"):

- *Bonnefoy v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-016764 CA 01 (43) (filed July 6, 2021);
- *Cattarossi v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-016942 CA 01 (22) (filed July 9, 2021);
- *Giganti v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-016855 CA 01 (24) (filed July 8, 2021);
- *Henriquez v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-16701 CA 01 (43) (filed July 6, 2021);
- *Lozano v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-016856 CA 01 (09) (filed July 8, 2021);
- *McManus v. Champlain Towers South Condominium Assoc. Inc.,* Case No. 2021-017012 CA 01 (22) (filed July 12, 2021);
- *Obias-Manno v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-016780 CA 01 (43) (filed July 6, 2021); and
- *Rosenberg v. Champlain Towers South Condominium Assoc. Inc.*, Case No. 2021-015521-CA-01 (filed June 30, 2021).

16. The Underlying Lawsuits allege bodily injury and property damage occurring on June 24, 2021 at the earliest.

17. As to Morabito, the Underlying Lawsuits allege negligence, gross negligence, and wrongful death based on Morabito's alleged acts or omissions in connection with professional engineering services it provided.

18. The Underlying Lawsuits are ongoing and additional lawsuits against Morabito arising from the Condominium collapse are expected.

19. Morabito tendered the above eight Underlying Lawsuits to CNA, and CNA declined coverage for the Lawsuits.

20. On information and belief, Architects & Engineers Insurance Company ("AEIC"), Morabito's professional liability carrier, is defending Morabito in the Underlying Lawsuits under a claims made professional liability policy covering policy period November 8, 2018 to November 8, 2021.

## II.     The CNA Primary Policies

21. As potentially relevant here, CNA issued four primary commercial general liability policies (the "CNA Primary Policies") to Morabito covering year-long policy periods from November 1, 2017 to November 1, 2021:

| Writing Co. | Policy No. | Policy Period |
|---|---|---|
| NFICH | B 6011794867 | 11/1/2017-11/1/2018 |
| CCC | B 6011794867 | 11/1/2018-11/1/2019 |
| CCC | B 6011794867 | 11/1/2019-11/1/2020 |
| CCC | B 6011794867 | 11/1/2020-11/1/2021 |

True and correct copies of the CNA Primary Policies are attached hereto as Exhibits 1-4.

22. The CNA Primary Policies were obtained through a Maryland-based broker and delivered to Morabito at 952 Ridgebrook Rd., Suite 1700, Sparks Glencoe, MD 21152. Each contains Maryland-specific notices and endorsements.

23. The CNA Primary Policies provide numerous coverages, including, as relevant here, Commercial General Liability ("GCL") coverage. The 2017-2018 and 2018-2019 CNA Primary Policies have limits of $1 million per occurrence, with general and products/completed operations aggregate limits of $2 million. The 2019-2020 and 2020-2021 CNA Primary Policies have limits of $2 million per occurrence, with general and products/completed operations aggregate limits of $4 million.

### A. Insuring Agreement and Related Definitions

24. Each of the CNA Primary Policies contains an insuring agreement for Commercial General Liability providing CNA will pay amounts the insured "becomes legally obligated to pay" because of "bodily injury" or "property damage" that "occurs during the policy period" and is "caused by an 'occurrence.'" The insuring agreement also limits coverage to the extent the insured and/or its employees were aware of bodily injury or property damage occurring in whole or in part prior to the policy period, and further provides that CNA has the "right and duty" to defend the insured against suits seeking damages to which the insurance applies. Specifically, in pertinent part, the insuring agreement provides:

> **A. Coverages**
>
> **1. Business Liability (Bodily Injury, Property Damage, Personal and Advertising Injury)**
>
> **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury," [or] "property damage" … to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," [or] "property damage" … to which this insurance does not apply …
>
> **b.** This insurance applies:

  **(1)** To "bodily injury" and "property damage" only if:

  **(a)** The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the coverage territory;

  **(b)** The "bodily injury" or "property damage" occurs during the policy period; and

  **(c)** Prior to the policy period, no insured ... and no "employee" authorized by you to give or receive notice of an "occurrence" or claim knew that the "bodily injury" or "property damage" had occurred, in whole or in part. If such a listed insured or authorized "employee" knew, prior to the policy period, that the "bodily injury" or "property damage" occurred, then any continuation, change or resumption of such "bodily injury" or "property damage" during or after the policy period will be deemed to have been known before the policy period …

 **c.** "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any insured ... or any "employee" authorized by you to give or receive notice of an "occurrence" or claim, includes any continuation, change or resumption of "bodily injury" or "property damage" after the end of the policy period.

 **d.** "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any insured ... or any "employee" authorized by you to give or receive notice of an "occurrence" or claim:

  **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

  **(2)** Receives a written or verbal demand or claim for damages because of the "bodily injury" or "property damage"; or

  **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

25. The CNA Primary Policies define the term "occurrence" as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."

26. "Property damage" is defined in pertinent part as "[p]hysical injury to tangible property, including all resulting loss of use of that property" or "[l]oss of use of tangible property

7

that is not physically injured," where "[a]ll such loss of use shall be deemed to occur at the time of the 'occurrence' that caused it."

27. The CNA Primary Policies, as modified by endorsement, define "bodily injury" to mean "physical injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the physical injury, sickness or disease."

### B. Coverage Exclusions

28. Each of the CNA Primary Policies contains various exclusions to coverage. Exclusion J (Professional Services) provides that the insurance provided by the CNA Primary Policy does not apply to bodily injury or property damage "caused by the rendering or failure to render any professional service":

> This insurance does not apply to:
>
> **j.     Professional Services**
>
> "Bodily injury," [or] "property damage," ... caused by the rendering or failure to render any professional service. This includes but is not limited to: …
>
> **(2)**     Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
>
> **(3)**     Supervisory, inspection or engineering services; …
>
> This exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured, if the "occurrence" which caused the "bodily injury" or "property damage," or the offense which caused the "personal and advertising injury," involved the rendering or failure to render any professional service.

29. The "Construction Management Errors or Omissions" endorsement in each of the CNA Primary Policies bars coverage for all liability for construction management activities. The

first portion of the endorsement covers the more traditional "management" aspects, including the preparation of "field orders" and "quality control" activities. The second part of the endorsement bars coverage for bodily injury or property damage "arising out of construction, demolition, installation, service or repair work done by or for you," *i.e.* relating to the construction activities themselves.

30. Exclusion A (Expected or Intended Injury) further provides the insurance does not apply to bodily injury or property damage "expected or intended from the standpoint of the insured."

    **C.**    **Coverage Conditions**

31. In addition to coverage exclusions, each of the CNA Primary Policies contains conditions to coverage that require the insured to notify and cooperate with CNA in the event of a claim or suit against the insured, including by recording the specifics of the claim or suit and notifying CNA as soon as practicable, providing copies of legal papers in connection with a claim or suit, cooperating in the settlement of claims, and refraining from making voluntary payments or voluntarily incurring obligations without consent.

32. As to priority of applicable coverages, the section captioned "H. Other Insurance" in the "Businessowners Common Policy Conditions" form provides that the CNA Primary Policies are excess of "other insurance covering the same loss or damage," "other insurance that insures for direct physical loss or damage," and/or "other primary insurance available to you covering liability for damages arising out of the premises or operations for which you have been added as an additional insured," and that CNA has no duty to defend any claim or suit that another insurer has a duty to defend "[w]hen this insurance is excess."

### III.     The CNA Umbrella Policies

33.     As relevant here, CNA also issued four umbrella/excess liability policies (the "CNA Umbrella Policies," and together with the CNA Primary Policies, the "CNA Policies") to Morabito covering year-long policy periods from November 1, 2017 to November 1, 2021, as follows:

| Writing Co. | Policy No. | Policy Period |
|---|---|---|
| CCC | B 6011795632 | 11/1/2017-11/1/2018 |
| CCC | B 6011795632 | 11/1/2018-11/1/2019 |
| CCC | B 6011795632 | 11/1/2019-11/1/2020 |
| CCC | B 6011795632 | 11/1/2020-11/1/2021 |

True and correct copies of the CNA Umbrella Policies are attached as Exhibits 5-8 hereto.

34.     The CNA Umbrella Policies were obtained through a Maryland-based broker and delivered to Morabito at 952 Ridgebrook Rd., Suite 1700, Sparks Glencoe MD 21152.  Each contains Maryland-specific notices and endorsements.

35.     The CNA Umbrella Policies have limits of liability of $5 million per occurrence, with a general aggregate limit of $5 million.

#### A.     Insuring Agreement and Related Definitions

36.     The insuring agreement in the CNA Umbrella Policies provides the insurance applies only to amounts "in excess of" applicable "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of bodily injury or property damage to which the insurance applies.  As with the insuring agreement in the CNA Primary Policies, the insuring agreement in the CNA Umbrella Policies limits coverage to the extent the insured and/or its employees were aware of bodily injury or property damage occurring in whole or in part prior to the policy period.  Specifically, in pertinent part, the insuring agreement provides:

**SECTION I – COVERAGES**

**1.      Insuring Agreement**

We will pay on behalf of the insured those sums in excess of "scheduled underlying insurance," "unscheduled underlying insurance" or the "retained limit" that the insured becomes legally obligated to pay as "ultimate net loss" because of "bodily injury," "property damage" or "personal and advertising injury" to which this insurance applies.

**a.**      This insurance applies to "bodily injury" and "property damage" only if:

**(1)** The "bodily injury" or "property damage" is caused by an "incident" anywhere in the world;

**(2)** The "bodily injury" or "property damage" occurs during the policy period; and

**(3)** With respect to "bodily injury" or "property damage" that continues, changes or resumes so as to occur during more than one policy period, both of the following conditions are met:

**(i)** Prior to the policy period, no "authorized insured" knew the "bodily injury" or "property damage" had occurred, in whole or in part; and

**(ii)** During the policy period, an "authorized insured" first knew that "bodily injury" or "property damage" had occurred, in whole or in part.

For purposes of this Paragraph **(1) a.(3)** only, if **(a)** "bodily injury" or "property damage" that occurs during this policy period does not continue, change, or resume after the termination of this policy period; and **(b)** no "authorized insured" first knows of this "bodily injury" or "property damage" until after the termination of this policy period, then such first knowledge will be deemed to be during this policy period.

**b.**      "Bodily injury" or "property damage" which occurs during the policy period and was not, prior to the policy period, known to have occurred by any "authorized insured" includes any continuation, change or resumption of that "bodily injury" or "property damage" after the end of the policy period.

11

    **c.**    "Bodily injury" or "property damage" will be deemed to have been known to have occurred at the earliest time when any "authorized insured":

    **(1)** Reports all, or any part, of the "bodily injury" or "property damage" to us or any other insurer;

    **(2)** Receives a written or verbal demand, claim or "suit" for damages because of the "bodily injury" or "property damage"; or

    **(3)** Becomes aware by any other means that "bodily injury" or "property damage" has occurred or has begun to occur.

37.    "Incident" means an "occurrence," and "occurrence" and "property damage" are defined substantially the same as in the CNA Primary Policies. "Bodily injury" is defined as "bodily injury, sickness or disease sustained by a person, including death, humiliation, shock, mental anguish or mental injury by that person at any time which results as a consequence of the bodily injury, sickness or disease."

38.    The CNA Umbrella Policies provide that CNA will investigate and defend an insured or reimburse an insured for suits brought against an insured for a claim or suit that alleges damages because of "bodily injury" or "property damage" not covered under the CNA Primary Policies or "[u]nscheduled underlying insurance" to which the insurance under the CNA Umbrella Policies applies.

    **B.**    **Coverage Exclusions**

39.    As with the CNA Primary Policies, each of the CNA Umbrella Policies contain various exclusions to coverage, including exclusions applicable to "professional services."

40.    The CNA Umbrella Policies each contain an "Architects, Engineers and Surveyors Endorsement" that provides:

    **1.** This insurance does not apply to "bodily injury," "property damages" or "personal and advertising injury" arising out of the rendering or failure to render any professional services by you or

12

on your behalf, but only with respect to either or both of the following operations:

**a.** Providing engineering, architectural, or surveying services to others in your capacity as an engineer, architect or surveyor; and

**b.** Providing or hiring independent professionals to provide engineering, architectural, or surveying services in connection with construction work you performed.

41. The "Architects, Engineers and Surveyors Endorsement" further provides that the insurance provided by the Policy does not apply to bodily injury or property damage "expected or intended from the standpoint of the insured."

42. The CNA Umbrella Policies each also contain a "Contractor Limitation Endorsement," which provides that the insurance does not apply to "bodily injury" or "property damage" "arising out of the rendering of or failure to render any 'professional services' by or on behalf of any insured."  Specifically, that portion of the Endorsement states:

This insurance does not apply:

**1.** To "bodily injury," "property damage," or "personal and advertising injury" arising out of the rendering of or failure to render any "professional services" by or on behalf of any insured;

43. The Contractor Limitation Endorsement further provides that the insurance provided by the Policy does not apply to (i) "property damage" arising out of the "collapse hazard," which includes "'structural property damage' and any resulting 'property damage' to any other property at any time," or (ii) "bodily injury" or "property damage," arising out of the "subsidence" of land, which includes but is not limited to earth sinking, rising, settling, slipping, falling away, caving in, eroding, or tilting; collapse or movement of fill; or any other movement of land or earth.

### C.    Conditions to Coverage

44.    The CNA Umbrella Policies contain conditions to coverage that require the insured to notify CNA in the event of an "incident" or in the event a claim or suit is brought against the insured and provide CNA with certain related information.

### D.    Other Limitations on Coverage

45.    The "Underlying Insurance Coverage Limitation Endorsement" in each of the CNA Umbrella Policies provides that the CNA Umbrella Policy "does not provide broader" general liability coverage than that that provided by the corresponding CNA Primary Policy and that "[i]n the event of any difference" between the exclusions, restrictions, limiting terms or conditions in the CNA Umbrella Policy and the corresponding CNA Primary Policy, "the more restrictive provision shall apply."

### COUNT I:  REQUEST FOR DECLARATORY RELIEF
**(No Duty to Defend or Indemnify Under CNA Primary Policies)**

46.    CNA repeats and re-alleges the allegations of paragraphs 1 to 45 as if set forth fully herein.

47.    An actual controversy exists between CNA, on the one hand, and Morabito, on the other hand, regarding CNA's obligation to defend and/or indemnify Morabito for the Underlying Lawsuits under the CNA Primary Policies.

48.    The CNA Primary Policies, subject to their terms, conditions, exclusions, and limitations, generally provide coverage for damages because of "bodily injury" or "property damage" that occurs during the policy period and is caused by an "occurrence."

49.    Claimants in the Underlying Lawsuits seek damages from Morabito based on allegations relating to Morabito's rendering or failure to render professional services.

50. Numerous exclusions in both the CNA Primary Policies preclude coverage for Morabito for damages arising from the rendering or failure to render professional services.

51. The CNA Primary Policies also contain other exclusions that bar coverage for the Underlying Lawsuits.

52. Further, the CNA Primary Policies contain conditions that require compliance as a precedent to coverage for the Underlying Lawsuits, which Morabito has not satisfied.

53. Accordingly, CNA is entitled to a declaration that it has no obligation under the CNA Primary Policies to defend and/or indemnify Morabito in connection with the Underlying Lawsuits.

## COUNT II: REQUEST FOR DECLARATORY RELIEF
### (No Duty to Defend or Indemnify Under CNA Umbrella Policies)

54. CNA repeats and re-alleges the allegations of paragraphs 1 to 53 as if set forth fully herein.

55. An actual controversy exists between CNA, on the one hand, and Morabito, on the other hand, regarding CNA's obligation to indemnify Morabito for the Underlying Lawsuits under the CNA Umbrella Policies.

56. The CNA Umbrella Policies, subject to their terms, conditions, exclusions, and limitations, generally provide coverage for damages "in excess of" the corresponding CNA Primary Policies and any other insurance available to the insured "that the insured becomes legally obligated to pay because of "bodily injury" or "property damage" to which the insurance under the CNA Umbrella Policies applies.

57. The CNA Umbrella Policies impose on CNA a duty to defend only to the extent the insurance is applicable and no other carrier has a duty to defend.

15

58. The Underlying Insurance Coverage Limitations Endorsement provides that coverage under the CNA Umbrella Policies is no broader than coverage under the CNA Primary Polices, and coverage is not afforded for the Underlying Lawsuits under the terms, conditions, and exclusions of CNA Primary Polices.

59. Additionally, claimants in the Underlying Lawsuits seek damages from Morabito based on allegations relating to Morabito's rendering or failure to render professional services, and numerous exclusions in the CNA Umbrella Policies preclude coverage for Morabito for damages arising from the rendering or failure to render professional services.

60. The CNA Umbrella Policies contain additional exclusions that bar coverage for the Underlying Lawsuits.

61. The CNA Umbrella Policies also contain conditions that require compliance as a precedent to coverage for the Underlying Lawsuits, which Morabito has not satisfied.

62. Accordingly, CNA is entitled to a declaration that it has no obligation under the CNA Umbrella Policies to defend and/or indemnify Morabito in connection with the Underlying Lawsuits.

## **PRAYER FOR RELIEF**

WHEREFORE, plaintiffs National Fire Insurance Company of Hartford and Continental Casualty Company hereby respectfully request that this Court enter judgment in favor of CNA and against Morabito as follows:

1. As to **Count I**, determine and declare:

    a. CNA has no duty under the CNA Primary Policies to defend or indemnify Morabito in connection with the Underlying Lawsuits;

    b. CNA is entitled to an award of attorney's fees and costs; and

  c. Such other and further relief as is necessary and proper.

2. As to **Count II**, determine and declare:

  a. CNA has no duty under the CNA Umbrella Policies to defend or indemnify Morabito in connection with the Underlying Lawsuits;

  b. CNA is entitled to an award of attorney's fees and costs; and

  c. Such other and further relief as is necessary and proper.

Date:  August 4, 2021

            Respectfully submitted,

            /s/  *Timothy R. Dingilian*
            Timothy R. Dingilian, Bar No. 15444
            James P. Ruggeri (*pro hac forthcoming*)
            Sara K. Hunkler (*pro hac forthcoming*)
            Shipman & Goodwin LLP
            1875 K Street NW, Suite 600
            Washington, DC  20006
            Tel:  202-469-7750
            Fax:  202-469-7751
            tdingilian@goodwin.com
            jruggeri@goodwin.com
            shunkler@goodwin.com

            *Counsel for Plaintiffs National Fire Insurance Company of Hartford and Continental Casualty Company*