**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| NATIONAL FIRE INSURANCE COMPANY | : | |
| OF HARTFORD and | : | |
| CONTINENTAL CASUALTY COMPANY, | : | Civil Action. No. 1:21-cv-01966 |
| | : | (Chief Judge James K. Bredar) |
| Plaintiffs, | : | |
| v. | : | |
| | : | |
| MORABITO CONSULTANTS, INC., | : | |
| Defendant. | : | |

**BRIEF IN SUPPORT OF DEFENDANT MORABITO CONSULTANTS, INC.'S
MOTION TO DISMISS PURUSANT TO FEDERAL RULE OF CIVIL PROCEDURE
12(b)(7) OR, IN THE ALTERNATIVE, TO DECLINE JURISDICTION OVER THIS
ACTON OR STAY THIS ACTION PENDING THE RESOLUTION OF A SIMILAR
INSURANCE COVERAGE ACTION PENDING IN FLORIDA STATE COURT**

**I.      INTRODUCTION**

Plaintiffs, National Fire Insurance Company of Hartford ("NFICH") and Continental

Casualty Company ("CCC"), referred to together herein as "CNA," initiated this declaratory

judgment action on August 4, 2021, through the filing of a Complaint for Declaratory Judgment

against Defendant Morabito Consultants, Inc. ("Morabito").  *See* Doc. No. 1.  After having

waived service on August 6, 2021 (Doc. No. 4), Morabito now moves for dismissal of the

Complaint under Federal Rule of Civil Procedure 12(b)(7) for failure to join required parties

under Federal Rule of Civil Procedure 19, or, alternatively, for this Court to decline to exercise

its discretionary jurisdiction over this action pursuant to the Declaratory Judgment Act (the

"DJA"), 28 U.S.C.S. §§ 2201-2202, or stay the instant action pending the resolution of the

declaratory judgment action filed by Morabito in the 11th Judicial Circuit in and for Miami-Dade

County, Florida (the "Florida Coverage Action").  A copy of the complaint filed in the Florida

Coverage Action is attached as Exhibit A.  Morabito files the instant brief in support of its concurrently filed motion to dismiss.

## II.      BACKGROUND

On June 24, 2021, ninety-eight individuals lost their lives as a result of the tragic Champlain Towers South condominium collapse in the town of Surfside, Florida (the "Collapse").  All 136 units in the condominium building were destroyed either during the initial Collapse or subsequent demolition of the building ten days later due to its dangerously unstable condition.

Morabito is an engineering firm retained by the Champlain Towers South Condominium Association (the "Association") to perform certain services with respect to the building where the Collapse occurred, and in conjunction with that assignment the Association and Morabito executed an Engineering Services Agreement, which is attached hereto as Exhibit B.  As a result of the Collapse, Morabito has been named as a defendant in approximately seventeen individual lawsuits[1] brought by the estates and representatives of the Victims of the Collapse, all filed in the Circuit Court of the 11th Judicial Circuit in and for Miami-Dade County, Florida.[2]  The Association is also named as a defendant in these numerous Florida actions.  Neither the Victims nor the Association have been joined by CNA in the above-captioned action.

This action pertains to the duties that CNA owes to Morabito pursuant to a set of policies for comprehensive general liability insurance that CNA issued to Morabito from November 1, 2017 to November 1, 2021 (the "CNA Primary Policies"), as well as umbrella policies issued to

---

[1] Plaintiff Santander averred allegations on behalf of plaintiffs in that action and a class, namely "all people who were located, residing or owning property in Champlain Towers South…" *See* Ex. D, paragraph 8(h).
[2] When referring to the plaintiffs in those actions, Morabito uses the term "Victims" herein.

Morabito by CNA for the aforementioned periods (the "CNA Umbrella Policies"), which are referred to together herein as the "Policies" unless otherwise noted.  Notably, the Association is an additional insured under the policies issued for two of the policy periods, pursuant to the Engineering Services Agreement.  *See* Ex. B.

The complaints in the underlying actions filed against Morabito and the Association implicate the coverage provided by the Policies.  The first complaint filed against Morabito and the Association was on June 30, 2021, just six days after the collapse.  *See Rosenberg v. Champlain Towers South Condominium Association, Inc. and Morabito Consultants, Inc.*, 11th Judicial Circuit in and for Miami-Dade County, Florida, No. 2021-015521 CA 01 (the "Rosenberg Complaint"), attached as Exhibit C.  A list identifying all complaints filed to date against Morabito and the allegations identifying the plaintiffs is attached as Exhibit D.  In sum, these complaints allege, in pertinent part, that Morabito acted negligently in both performing services and conducting itself generally in conjunction with the condominium building and that such negligence resulted in the injuries described in the complaints, which injuries are mainly the deaths of those present in the building at the time of the Collapse and the damage to both real and personal property when the building partially collapsed and then was subsequently demolished.  Additionally, Morabito has recently initiated the Florida Coverage Action, naming the Association and Victims as defendants in accordance with the procedures set forth in the Florida Declaratory Judgment Act, Fla. Stat. §86.091.  *See Morabito Consultants, Inc. v. Continental Casualty Company, et. al*., 11th Judicial Circuit in and for Miami-Dade County, Florida.[3]

---

[3] A Case Number has yet to be assigned as of the filing of this brief.

CNA denied coverage to Morabito by letter dated August 4, 2021, and then minutes after emailing the coverage denial to Morabito, proceeded to file the present action. A copy of CNA's denial letter is attached as Exhibit G. The current Complaint consists of the following counts: a request for declaratory relief finding no duty to defend Morabito under CNA Primary Policies (Count I), and a request for declaratory relief finding no duty to defend Morabito under CNA Umbrella Policies (Count II). CNA requests a declaration that it need not defend or indemnify Morabito in the actions lodged against it in Florida state court stemming from the Collapse because those underlying lawsuits implicate circumstances that fall outside the scope of the Policies issued by CNA to Morabito. *See* Complaint at ¶¶ 46-62.

For the reasons discussed more fully below, CNA's declaratory judgment complaint warrants dismissal under Federal Rule of Civil Procedure 12(b)(7) because it fails to join necessary and indispensable parties under Rule 19. Further, it is a proper exercise of this Court's discretion to decline jurisdiction over this case, or alternatively, stay this action pending resolution of the Florida Coverage Action.

## III.   ARGUMENT

### A.   Standard of Review

Federal Rule of Civil Procedure 12(b)(7) permits a party to move for dismissal of the complaint for failure to join a party under Rule 19, which governs required joinder of parties. *See* Fed. R. Civ. P. 12(b)(7); Fed. R. Civ. P. 19. "'The inquiry contemplated by Rule 19 is a practical one' which is left 'to the sound discretion of the trial court.'" *Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 639 (M.D.N.C. 2017) (quoting *Coastal Modular Corp. v. Laminators, Inc.*, 635 F.2d 1102, 1108 (4th Cir. 1980)). As summarized somewhat recently by the United States Court of Appeals for the Fourth Circuit:

> When adjudicating a motion under Federal Rule of Civil Procedure 19, a district court asks first whether the nonjoined party is necessary under Rule 19(a) and then whether the party is indispensable under Rule 19(b). *See Nat'l Union Fire Ins. Co. v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 249 (4th Cir. 2000). If the nonjoined party is necessary and indispensable to the action, but joinder would destroy subject matter jurisdiction, the court must dismiss the action. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Dismissal, though 'a drastic remedy that should be employed only sparingly,' is 'required' if the nonjoined party 'is both necessary and indispensable.' *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (alteration and internal quotation marks omitted). That determination "must be made pragmatically, in the context of the 'substance' of each case, rather than by procedural formula." *Provident Tradesmens Bank & Tr. Co. v. Patterson*, 390 U.S. 102, 119 n.16, 88 S.Ct. 733, 19 L.Ed.2d 936 (1968).

*Gunvor SA v. Kayablian*, 948 F.3d 214, 218–19 (4th Cir. 2020).

"This Court's analysis under a Rule 12(b)(7) motion to dismiss for failure to join an indispensable party involves a two-step inquiry." *R-Delight Holding LLC v. Anders*, 246 F.R.D. 496, 498 (D. Md. 2007) (citing *Owens–Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir.1999)). "First, this Court must determine whether the party is 'necessary' to the action pursuant to Rule 19(a)." *Id.* (citing *Owens-Illinois, Inc.*, 186 F.3d at 440). Rule 19(a)(1)—titled "Persons Required to be Joined if Feasible"—reads as follows:

> **(1) Required Party**. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
>> (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>>
>> (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>>
>>> (i) as a practical matter impair or impede the person's ability to protect the interest; or
>>>
>>> (ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

"Second, if this Court deems the party necessary, but the party cannot be joined because its joinder would destroy [jurisdiction] . . . this Court must then consider whether the party is indispensable pursuant to Rule 19(b) such that the case must be dismissed." *R-Delight Holding*, 246 F.R.D. at 499 (citing *Owens–Illinois, Inc.*, 186 F.3d at 440). Rule 19(b)—which applies "when joinder is not feasible"—provides that:

> (b) **When Joinder Is Not Feasible**. If a person who is required to be joined if feasible cannot be joined, **the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed**. The factors for the court to consider include:
>
>> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
>>
>> (2) the extent to which any prejudice could be lessened or avoided by:
>>
>>> (A) protective provisions in the judgment;
>>>
>>> (B) shaping the relief; or
>>>
>>> (C) other measures;
>>
>> (3) whether a judgment rendered in the person's absence would be adequate; and
>>
>> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19(b) (emphasis added). Notably, in considering these factors, "[t]his analysis is not formalistic and the Court must consider the particular factual setting presented." *See R-Delight Holding LLC*, 246 F.R.D. at 499 (citing *Schlumberger Indus. Inc., v. Nat'l Sur. Corp.*, 36 F.3d 1274, 1286 (4th Cir.1994); *Owens–Illinois, Inc.*, 186 F.3d at 441). The analysis as to Rule 19(b) is the applicable standard for assessing whether a party is "indispensable." *See Crum & Forster Specialty Ins. Co. v. Gemcraft Homes, Inc.*, No. CIV.A. RDB-14-1464, 2014 WL

3741075, at *2 (D. Md. July 28, 2014) (citing *Owens–Illinois, Inc.*, 186 F.3d at 440).

Additionally, courts have remarked that the Rule 19(a)(1) analysis is very much related to the

factors that are to be used under Rule 19(b).  *See Schlumberger*, 36 F.3d at 1287–88 (citing *City*

*of Littleton, Colo. v. Com. Union Assur. Cos.*, 133 F.R.D. 159, 165 (D. Colo. 1990)).

As explained more fully below, these principles compel the conclusion that CNA's

Complaint should be dismissed pursuant to Federal Rule of Civil Procedure 12(b)(7) for failure

to join required parties under Rule 19.

      **B.**    **This Court should dismiss the above-captioned action pursuant to Rule 12(b)(7) due to CNA's failure to join necessary and indispensable parties, given that the Association and Victims are both "necessary" parties under Rule 19(a)(1) and "indispensable" parties under Rule 19(b).**

Initially, this action cannot proceed because CNA has failed to join the Association, an

additional insured under two of the Policies, as well as the Victims, who clearly are "required

parties" under Rule 19(a)(1); thus, the application of Rule 19(b) warrants dismissal of the instant

action.

      1.    <u>The Association and Victims are necessary/required parties for purposes of Rule 19(a)(1).</u>

The Association and Victims fall squarely within the scope of Rule 19(a)(1).  As noted

*supra*, Rule 19(a) states, in pertinent part, that:

> **(1) Required Party.** A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>
> > (A) in that person's absence, the court cannot accord complete relief among existing parties; or
> >
> > (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
> >
> > > (i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1).

Here, there can be no question that CNA was required to join the Association and Victims. As the pleadings and claims made in the underlying actions and Florida Coverage Action demonstrate, these parties' interests in the disposition of the instant action are such that, if they are not joined, their interests are seriously impaired, and there is an enormous and obvious risk of inconsistent obligations on the part of Morabito and the Association to the Victims with respect to any coverage determination that may arise from this action, should the Court decline to dismiss this case.

Notably, the Association is an additional insured under the Policies purchased by Morabito that cover the period from November 1, 2019 to November 1, 2021. On September 24, 2021, the Association's counsel sent a demand to CNA for coverage as an additional insured under the policies issued by CNA to Morabito for the periods from 11/1/2019 to 11/01/2020 (the "2019 Policy"), and from 11/1/2020 to 11/1/2021 (the "2020 Policy"). A copy of this letter of September 24, 2021 is attached as Exhibit E. As explained by the Association's counsel, the Engineering Services Agreement effective June 10, 2020 (the "2020 Agreement") between the Association and Morabito required the Association to be an additional insured with respect to Morabito's Commercial General Liability Insurance. The 2019 Policy and 2020 Policy cumulatively contain four separate endorsements that provide "Blanket Additional Insured" coverage to any entity for whom the insured is required by written contract or agreement to name as an additional insured. Because the 2020 Agreement required the Association to be an

additional insured, the Association automatically became qualified as a potential additional insured under both the 2019 Policy and 2020 Policy.

On October 1, 2021, CNA's counsel sent a letter to the Association's counsel denying the Association's demand for coverage as an additional insured under the 2019 Policy and 2020 Policy.  A copy of this letter of October 1, 2021 is attached as Exhibit F.  CNA's denial of coverage to the Association as an additional insured is based on the same primary position as its denial of coverage to Morabito, which is that Morabito's actions involved professional services that are allegedly excluded by the Policies.   CNA did not address the allegations of general negligence asserted against Morabito in its denial of coverage to both Morabito and the Association.

As a result of the Association's direct claim for coverage as an additional insured and CNA's denial of coverage for some of the same reasons as its denial of coverage to Morabito, the Association has a direct interest in the determination as to CNA's duty to provide coverage as to Morabito in connection with the Collapse.  The Victims similarly possess such an interest in light of the actions lodged by them against Morabito and the Association in Florida state court, as well, as the Victims are seeking compensation directly from Morabito and the other named defendants in those actions.

Further, the weight of authority discussing Rule 19(a)(1) compels the conclusion that CNA was required to join both the Association and the Victims, especially given the circumstances described above.  *See Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 435 (4th Cir. 2014) (concluding there were necessary parties because "[i]f Hanna is entitled to full recovery on the defects in her house, then it is crucial that all of the defendants be bound to the burdens of a common judgment" in light of authority stating that "failure to join insurers as

parties would potentially cause [an] existing party to 'wind up with less than full coverage even though it was legally entitled to full coverage'" (citing *Schlumberger*, 36 F.3d at 1286)); *Gilliand v. Koch Trucking, Inc.*, No. CIV. JFM 11-3073, 2015 WL 2395148, at *5 (D. Md. May 19, 2015) (finding necessary parties under Rule 19(a)(1) where "the defendants would have a "substantial risk of incurring double, multiple, or otherwise inconsistent obligations" and "[t]he possibility that two courts would reach different conclusions regarding the identical employment contracts and factual allegations are the kind of 'incongruous results' that the Fourth Circuit has held are 'grounds for finding a non-joined party necessary'" (quoting *Owens–Illinois*, 186 F.3d at 441)); *Crum & Forster*, 2014 WL 3741075, at *3 (concluding that a party was necessary where another party "would potentially be subject to inconsistent legal conclusions regarding coverage obligations in the different policies covering the relevant time period"); *see also Nat'l Union Fire Ins. Co. of Pittsburgh, PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 250-51 (4th Cir. 2000) (finding that party was necessary under Rule 19(a) where, in pertinent part, "permitting this action to go forward without Rite Aid would impair or impede Rite Aid's ability to protect a "claim[ed] . . . interest relating to the subject of the action" in light of precedent acknowledging that "[a] court should hesitate to conclude, however, that a litigant can serve as a proxy for an absent party unless the interests of the two are identical" (citing *Washington v. Daley*, 173 F.3d 1158, 1167 (9th Cir.1999); *Tell v. Trustees of Dartmouth Coll.*, 145 F.3d 417, 419 (1st Cir. 1998))).

Here, where both the Association has made a claim for coverage against CNA as an additional insured, and the Victims' underlying lawsuits directly implicate such coverage, relevant authority required CNA to join both of them in this action because they are "required" parties under Rule 19(a)(1).

2.      The Association and Victims are required parties who are also
         indispensable parties under Rule 19(b), over whom this Court cannot
         exercise jurisdiction, thus requiring dismissal of the instant action.

As discussed above, CNA was required to join the Association and Victims per

Rule 19(a)(1).  An evaluation of Rule 19(b) is thus necessary, but in this case, Rule 19(b)

requires dismissal of the instant action because this Court would lack personal

jurisdiction over the Association and Victims and there is no way for CNA to compel

their joinder in Maryland.[4]  Because the Association and Victims cannot validly be

joined, Rule 19(b) requires the Court to "determine whether, in equity and good

conscience, the action should proceed among the existing parties or should be dismissed"

and in doing so, look to the following factors:

> (1) the extent to which a judgment rendered in the person's absence might
> prejudice that person or the existing parties;
>
> (2) the extent to which any prejudice could be lessened or avoided by:
>
> > (A) protective provisions in the judgment;
> >
> > (B) shaping the relief; or
> >
> > (C) other measures;
>
> (3) whether a judgment rendered in the person's absence would be adequate; and

---

[4] The Association is based in Florida and is a Florida entity, and the Victims have a wide variety
of citizenships for purposes of personal jurisdiction, as demonstrated by the complaints filed in
the underlying lawsuits naming Morabito.  For the exercise of personal jurisdiction over them to
be deemed proper, one would need to demonstrate the existence of either general or specific
personal jurisdiction, neither of which is present here.  Indeed, there is no indication that
Maryland's long-arm statute could be invoked, and any attempt to establish personal jurisdiction
in this Court over these parties would offend due process concerns that are fundamental to a
court's personal jurisdiction analysis.  *See, e.g.*, *Brown Inv. Advisory & Tr. Co. v. Allen*, No. CV
JKB-19-2332, 2020 WL 5833034, at *5 (D. Md. Sept. 29, 2020) (setting forth general
framework for personal jurisdiction analysis as to a non-resident defendant for Rule 12(b)(2)
purposes). Morabito is not aware of any Victim that was considered domiciled in Maryland.

(4) whether the plaintiff would have an adequate remedy if the action were
dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

As with the concept of necessary/required parties under Rule 19(a)(1), the applicability of
Rule 19(b) to this case is amply supported by case law.  As an initial matter, it bears noting that
"[a] Rule 19(b) analysis is not mechanical; rather it is conducted in light of the equities of the
case at bar."  *See Nat'l Union Fire Ins. Co. of Pittsburgh*, 210 F.3d at 252 (quoting
*Schlumberger*, 36 F.3d at 1287).  Here, applying the aforementioned factors means that the
Association and Victims are indispensable parties under Rule 19(b), and it would be inequitable
to proceed with this case in their absence.  First, as to "the extent to which a judgment rendered
in the person's absence might prejudice that person or the existing parties," denying the instant
motion will undoubtedly prejudice both the Association and Victims because they will be denied
the ability to litigate any issue regarding CNA's denial of coverage based on the professional
services exclusion that applies equally to Morabito and the Association.  The Association has an
obvious interest in the outcome of this coverage issue because the Association is seeking
coverage under the same Policies as an additional insured.   Further, the Victims also have an
interest in the outcome of this coverage issue because they would seek to recover under the
Policies should they establish liability as to Morabito.[5]  *See id.* at 252-53 ("[I]f this suit were to
proceed without Rite Aid, Rite Aid would be impaired or impeded from protecting its separate
and distinct interest in the district court's determination of Rite Aid's reporting requirements

---

[5] Considering the ninety-eight deaths and real and personal property damage caused by the
Collapse and subsequent demolition of the building, if there was a finding of liability as to
Morabito, it is likely the damages assessed against Morabito would exceed the $7 Million in
available coverage through CNA.

under the policy and other agreements while National Union could be whipsawed by inconsistent judgments." (citing *H.D. Corp. v. Ford Motor Co.*, 791 F.2d 987, 993 (1st Cir. 1986))).

As to the second Rule 19(b) factor—the extent to which any prejudice could be lessened or avoided by protective provisions in the judgment, shaping the relief, or other measures—there is no conceivable remedy for a situation in which this Court disposes of the issue of CNA's coverage as to Morabito without impacting the Association and the Victims. The Association has made an independent demand for coverage as an additional insured, and any ruling by this Court on coverage will likely have a significant impact on the Association's direct and independent claim for coverage. Further, the Victims will be significantly impacted by this Court's ruling as to coverage because the Court's ruling will dictate whether they will be able to recover on any judgment against Morabito. The lack of any meaningful way for this Court to issue a declaration as to CNA's coverage obligations without impacting the Association and Victims, coupled with consideration of the other relevant factors, weighs in favor of dismissal. *See R-Delight Holding LLC v. Anders*, 246 F.R.D. at 504 ("[T]his Court cannot envision a satisfactory remedy to lessen or avoid the potential prejudice. Plaintiff suggests that Mr. Anders could intervene as a third-party plaintiff in this case, which would permit the Court to maintain subject matter jurisdiction. Without deciding whether this would even be an appropriate 'remedy' to satisfy the second factor, this Court concludes that the factors as a whole weigh in favor of a finding that Stephen Anders is an indispensable party.").

The third element— whether a judgment rendered in the person's absence would be adequate—also compels the conclusion that the Association and Victims are both indispensable parties under Rule 19(b)(2), in light of the serious potential for "whipsawing," as to which this Court and the Fourth Circuit have expressed strong concern in the context of Rule 19(b)

analyses. *See, e.g.*, *id.* ("'[C]onsideration of the first and third factors . . . address much the same concerns as under the Rule 19(a)(2) analysis" . . . the potential for factual and legal whipsawing suggests that the parties might be prejudiced by a judgment rendered in the absence of the non-diverse party . . . and, consequently, that such a resolution would be inadequate. . . . Thus, the first and third factors support a finding that [the party] is indispensable." (internal quotation marks omitted)); *Crum & Forster*, 2014 WL 3741075, at *4 ("The potential for prejudice to Gemcraft is high, in that it may be subject to inconsistent adjudications with the result that it may 'wind up with less than full coverage even though it was legally entitled to full coverage.'" (citing *Schlumberger*, 36 F.3d at 1286)).

Morabito has filed an action for declaratory relief against CNA in Florida where it has joined the Association and Victims as necessary and indispensable parties.  The Association and Victims will be bound by the decision of the Florida Court as to coverage.  However, should CNA obtain a more favorable ruling from this Court as it undoubtedly is hoping based on its forum shopping in filing this action in Maryland rather than in Florida where all interested parties can be joined, then the Association and Victims will not necessarily be able to rely on the benefits of any decision rendered by the Florida Court.  CNA will in essence be able to "whipsaw" the Association and Victims by relying on any judgment issued by this Court that is inconsistent with the judgment issued in the Florida Coverage Action.

Finally, the fourth factor, which is "whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder," like the others before it, also weighs in favor of dismissal because the Florida Coverage Action clearly provides the appropriate vehicle for deciding the coverage issues among all interested parties.  *See id.* at *5 ("Although the Court recognizes that such a forum may be less convenient than a federal forum for the out-of-state

insurers, any alleged inconvenience of appearing in the state forum (which, incidentally, was selected by Erie, not Gemcraft) does not outweigh the prejudice to Gemcraft should this action proceed without Firstline. The Court therefore determines that Firstline is indispensable."); *see also Owens-Illinois*, 186 F.3d at 442 ("Finally, with respect to the fourth factor, we see no reason why the Circuit Court of Kanawha County, West Virginia will not provide an adequate remedy for the parties in this case.  In fact, it is likely the best place for the adjudication of this matter since all of the Plaintiffs work at the same location and will share many witnesses and exhibits in the event a trial is held.  The West Virginia state court is more than capable of rendering an adequate and fair judgment in this matter.  With all four factors supporting a finding of indispensability, this Court could not in good conscience allow this case to proceed in the absence of the non-diverse, Ohio Plaintiffs.").

When applied to this case, such authority requires that this action be dismissed under Rule 19(b), as the Florida state court has jurisdiction over all interested parties and can issue a declaration as to the coverage issues associated with the Collapse that will be binding on all interested parties.  The Florida Coverage Action is in the same court as the underlying actions, and the Florida Court is already familiar with the allegations made in the underlying actions. Further, the Florida Court will be able to coordinate any discovery that is needed between the underlying actions and coverage action.  Thus, this factor, along with the additional factors discussed above, weighs in favor of dismissal because the Association and Victims are indispensable parties under Rule 19(b).

15

**C.**     **In light of the parallel Florida proceeding this Court should exercise its discretion to dismiss this case and decline to exercise jurisdiction over CNA's request for declaratory relief.**

The existence of the Florida Coverage Action also weighs in favor of dismissal of this action, as the Court should decline to exercise jurisdiction over this declaratory judgment action in lieu of the resolution of the Florida Coverage Action.  A federal court's jurisdiction over an action filed pursuant to the DJA is discretionary.  *See* 28 U.S.C.S. § 2201(a).  "[W]here state court parallel proceedings are involved, the court must consider principles of 'federalism, efficiency, and comity' when balancing the pertinent state and federal interests."  *Hiitt Contracting, Inc. v. Hartford Fire Ins. Co.*, No. CV 8:20-CV-2880-PX, 2021 WL 2352281, at *3 (D. Md. June 9, 2021) (quoting *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998)).  The Fourth Circuit has previously identified factors for a district court to consider in weighing whether to exercise such discretion.  *See VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013) ("The district court based its ruling on our decision in *United Capitol Insurance Co. v. Kapiloff* . . . which identified factors for district courts to consider in deciding whether to stay declaratory actions in deference to parallel state proceedings under *Brillhart/Wilton*.").  "[A]s with any multi-factor test governing the exercise of federal jurisdiction, a district court should not treat the factors as a 'mechanical checklist,' but rather should apply them flexibly in light of the particular circumstances of each case."  *VRCompliance*, 715 F.3d at 573 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 16 (1983)).  The relevant factors are as follows:

> (1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of "overlapping issues of fact or law" might create unnecessary "entanglement" between the state and federal courts; and (4) whether the federal action is mere "procedural fencing," in the sense that the action is merely the product of forum-shopping.

*Riley v. Dozier Internet L., PC*, 371 F. App'x 399, 402 (4th Cir. 2010) (citing *Kapiloff*, 155 F.3d at 493–94). As they pertain to the instant case, these factors warrant the exercise of this Court's discretion in dismissing this action in favor of litigation in the Florida Coverage Action.

As an initial matter, Florida has a strong interest in having the issues decided in its courts because the Association and many of the Victims are Florida citizens. The deaths all occurred in Florida, and the property damage occurred in Florida. To the extent a judgment is entered in favor of the Victims in the underlying actions, it will be the Florida Court that will need to address any enforcement, collection and garnishment proceedings, including any proceedings to collect on insurance coverage. All parties with any interest in the outcome of the instant action have been joined in the Florida Coverage Action, and the Florida Court has an interest in avoiding its coverage determinations being undermined by any conflicting decision issued by this Court. Accordingly, this case is not one in which "the contractual coverage issue will not be decided by the state tort case," and the Defendant in this action will not be a party to the state proceedings; rather, the opposite scenario is present here. *See Builders Mut. Ins. Co. v. Futura Grp., L.L.C.*, 779 F. Supp. 2d 529, 533–34 (E.D. Va. 2011) (acknowledging precedent finding that "[w]hile the State certainly has a strong interest in protecting its jurisprudence and an interest in deciding cases calling for application of its own law, to defer to the state court tort case in the circumstances before us will not advance the State's interests significantly because (1) the contractual coverage issue will not be decided by the state tort case, and (2) Penn–America is not a party to the state case").

As to the second factor, there is no question that the Florida Court could resolve the issues more efficiently than this Court, given that the Florida Coverage Action would likely be consolidated for discovery and other pre-trial purposes with the underlying tort actions and all

interested parties would be joined before the same court.   In contrast, this Court will not be able to join all required and indispensable parties and cannot afford complete relief to all necessary and indispensable parties.   Thus, this case is not one in which this Court could adjudicate the relevant claims "just as efficiently" as a state court; rather, the Florida Coverage Action is the most efficient avenue through which to resolve any coverage dispute relating to the Collapse, including this one.

The Florida Court has been significantly involved in the handling of the underlying tort actions, which have been consolidated before a single court and are being administered in a unified manner.  It would be much more efficient for the Florida Court to handle the coverage issues arising out of the underlying tort actions and administer all cases arising out of the Collapse in a consistent and unified manner.  As such, the "efficiency" factor weighs in favor of this Court declining to exercise its discretionary jurisdiction over the instant action.  *See Hiitt Contracting*, 2021 WL 2352281, at *5 ("As to the second *Kapiloff* factor, the relative efficiencies of proceeding in the state versus federal forum, this factor generally affords priority to the first suit filed 'absent the showing of balance of convenience in favor of the second action.' Although the state and federal actions were filed close in time, Virginia is undoubtedly closer to resolution. The parties have litigated dismissal motions, which were denied, and the parties have already started exchanging discovery.  Because the Virginia action has clearly 'progressed further,' this Court cannot decide the case any more quickly or efficiently than the Virginia court." (internal citations omitted)).

Here, although the Florida Coverage Action was filed second, the Florida Coverage Action will likely be consolidated with the underlying tort actions presently being litigated in

Florida, which were filed prior to CNA commencing the present action.  Thus, this factor also weighs in favor of declining to exercise jurisdiction over the instant case.

Third, there are numerous overlapping issues of fact and law between this action and the Florida Coverage Action that will create "unnecessary entanglement" between the Florida Court and this Court.  The same fundamental issues of insurance coverage will be decided in both actions.  CNA is seeking to disclaim coverage as to both Morabito and the Association on the basis of the professional services exclusion.  However, there are numerous allegations supporting claims of ordinary or general negligence against Morabito that will need to be addressed as part of any coverage analysis.  The Florida Court will likely have to interpret these same allegations as part of rulings in the underlying tort actions.  There could be both inconsistency and duplication between the Florida Court and this Court as to factual findings and legal conclusions material to the issue of coverage under the Policies.  Should this action proceed under such circumstances, there is a strong likelihood of "duplicative and potentially inconsistent judgments."  *See Hiitt Contracting*, 2021 WL 2352281, at *5 ("But the presence of these additional parties does not, at all, change the nature of the relief sought—to ascertain whether the insurers received proper and timely notice of the claims and whether the claims are covered under the policies.  Because this action and the Virginia action are the same in all material respects, allowing both to proceed would certainly risk duplicative and potentially inconsistent judgments.").

The fourth factor—"procedural fencing"— also weighs in favor of dismissal, as this action falls in line with other instances where "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum."  *See Allstate Ins. Co. v. Powe*, No. CV CCB-19-1376, 2020 WL 1159000, at

*5 (D. Md. Mar. 10, 2020) (quoting *Great American Ins. Co. v. Gross*, 468 F.3d 199, 212 (4th

Cir. 2006)).[6]  In the instant case, CNA denied coverage by letter dated August 4, 2021, and then

minutes after emailing the coverage denial to Morabito, proceeded to file the present action.  A

copy of CNA's denial letter is attached as Exhibit G.  CNA obviously timed its coverage denial

and filing of this action within minutes of each other in order to try and take advantage of what it

apparently believes is a favorable forum for its position on coverage.  CNA undoubtedly

understood the significance of its coverage determination as to the overall issues involving the

claims arising out of this tragic building collapse and did not want to take the chance that

Morabito or the Association would file a declaratory judgment action in Florida seeking a

determination as to coverage under the Policies.  CNA's action in racing to the Courthouse

within minutes of denying coverage is the type of "procedural fencing" that supports this Court

declining to exercise jurisdiction over this action and deferring to the Florida Court that will be

deciding the same or similar issues in the Florida Coverage Action.

        In sum, application of the *Kapiloff* factors weighs in favor of this Court exercising its

discretion to decline jurisdiction over the instant matter.

---

[6] *See also Powe*, 2020 WL 1159000, at *5 ("Of course, the insurance issue was not pending in
the state court when Allstate filed the declaratory judgment action.  But . . . the Fourth Circuit
held that a federal declaratory action may have been used as procedural fencing to 'acquire the
most hospitable forum' where (1) the underlying tort action was already pending in state court;
(2) the plaintiff insurer knew that a defendant in the underlying tort action would lodge an
insurance claim against it; (3) the plaintiff insurer knew that coverage issues were bound to arise
in the underlying tort proceedings; and (4) the plaintiff insurer 'attempted to have the coverage
issue determined by the federal court before the issue arose in the context of the state
proceedings.' . . . A similar sequence of events occurred here, providing some evidence of
procedural fencing. Accordingly, the court finds that the fourth *Kapiloff* factor weighs slightly
against exercising jurisdiction." (internal citation omitted)).

**D.    In the alternative, this Court should stay the above-captioned action pending the conclusion of the Florida Coverage Action.**

Alternatively, in light of the foregoing, Morabito respectfully requests that this Court stay the above-captioned action pending the resolution of the Florida Coverage Action, should the Court decline to dismiss this action pursuant to Rule 12(b)(7).  The *Kapiloff* factors render such a request proper.  In addition, a stay is appropriate and well within this Court's inherent authority "to exercise its judgment 'to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket.'"  *See Landress v. Tier One Solar LLC*, 243 F. Supp. 3d 633, 646 (M.D.N.C. 2017) (quoting *United States v. Ga. Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977)).  Further, for the reasons explained above, the relevant factors that guide a court's decision in whether to grant a stay—such as "the interests of judicial economy, the hardship and equity to the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay"—also weigh in favor of granting a stay here.  *See id.* (citing *White v. Ally Fin., Inc.*, 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013)).  A stay would be proper because: (1) allowing this action to proceed simultaneously while the Florida Coverage Action is underway implicates concerns regarding efficient use of judicial resources; (2) Morabito would undoubtedly be prejudiced by having to litigate this action while the Florida Coverage Action is ongoing, especially due to overlapping issues pertaining to CNA's duty to defend and indemnity Morabito; and (3) CNA would not be prejudiced by a stay, given that CNA has been joined in the Florida Coverage Action as well.  Accordingly, Morabito respectfully requests the entry of a stay of this action pending the resolution of the Florida Coverage Action should this Court not dismiss the case entirely.

IV.     **CONCLUSION**

For the reasons stated above, Morabito respectfully requests that this Court dismiss the above-captioned action for failure to join an indispensable party pursuant to Federal Rule of Civil Procedure 12(b)(7), or alternatively, decline to exercise jurisdiction over the instant action or stay the above-captioned action pending the outcome of the Florida Coverage Action, as discussed herein.

Respectfully submitted,

McNEES WALLACE & NURICK LLC

By   /s/ Paul D. Rose, Jr.
     Paul D. Rose, Jr.
     CPF #0112120254
     5283 Corporate Drive
     Frederick, MD 21703
     Tel: (301) 241-2011
     prose@mcneeslaw.com

*Counsel for Defendant Morabito Consultants, Inc.*

Dated:   October 5, 2021

## **<u>CERTIFICATE OF SERVICE</u>**

I, Paul D. Rose, Jr., Esquire, hereby certify that a true and correct copy of the foregoing

document was served upon the following through the Court's ECF system:

Timothy R. Dingilian, Esq.
James P. Ruggeri, Esq.
Sara K. Hunkler, Esq.
Shipman & Goodwin LLP
1875 K Street NW, Suite 600
tdingilian@goodwin.com
jruggeri@goodwin.com
shunkler@goodwin.com

*Counsel for Plaintiffs*

McNEES WALLACE & NURICK LLC

By   /s/ Paul D. Rose, Jr.
    Paul D. Rose, Jr.
    CPF #0112120254
    5283 Corporate Drive
    Frederick, MD 21703
    Tel: (301) 241-2011
    prose@mcneeslaw.com

*Counsel for Defendant Morabito Consultants, Inc.*

Dated:  October 5, 2021