IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

NATIONAL FIRE INSURANCE       \*
COMPANY OF HARTFORD, *et al.*,

     Plaintiffs,              \*

     v.                     \*           CIVIL NO. JKB-21-1966

MORABITO CONSULTANTS, INC.,     \*

     Defendant.            \*

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

## MEMORANDUM

This lawsuit arises from the tragic collapse of the Champlain Towers South Condominium (the "Condominium") in Surfside, Florida. Morabito Consultants, Inc. ("Morabito"), the Defendant here, was also named as a defendant in various lawsuits (the "Underlying Lawsuits") filed on behalf of persons killed or injured in the collapse of the Condominium. Morabito, in turn, sought insurance coverage from Plaintiffs National Fire Insurance Company of Hartford and Continental Casualty Company (collectively, "CNA"), under a commercial general liability policy (the "CGL Policy") and an umbrella insurance policy (the "Umbrella Policy" and collectively with the CGL Policy, the "Policies"). CNA denied coverage under the Policies and filed the instant lawsuit seeking a declaratory judgment that it has no obligation under either policy to defend or indemnify Morabito in connection with the Underlying Lawsuits. Currently pending before the Court is Morabito's Motion to Dismiss Pursuant to Rule 12(b)(7), Decline Jurisdiction, or Stay (ECF No. 5). The Motion is ripe for disposition,[1] and no hearing is required. *See* Local Rule 105.6 (D. Md. 2021). For the following reasons, Morabito's Motion will be denied.

---

[1] On January 28, 2022, the Parties filed a Stipulation Regarding Case Developments, which outlined progress that has occurred in the Florida cases related to this matter since the filing of the pending Motion. (ECF No. 13.) In that

## I.    *Background*

On June 24, 2021, the Condominium partially collapsed, resulting in the deaths of 98 people. (Compl. ¶ 13, ECF No. 1.) Victims of the collapse and their families subsequently filed numerous lawsuits alleging that tortious conduct had caused the collapse. (*Id.* ¶ 15; *see also* ECF No. 5-9 (listing all Underlying Lawsuits filed as of October 5, 2021).) Many of these complaints named Morabito as a defendant due to structural engineering services it had provided to the Champlain Towers South Condominium Association (the "Association") in 2018 and 2020. (Compl. ¶¶ 10, 11, 15.) They allege "negligence, gross negligence, and wrongful death based on Morabito's alleged acts or omissions in connection with professional engineering services it provided." (*Id.* ¶ 17.)

Morabito tendered the Underlying Lawsuits to CNA, seeking coverage under the Policies, which CNA declined. (*Id.* ¶ 19.) In declining coverage, CNA relied on exclusions in each of the Policies applicable to Professional Services. (*Id.* ¶¶ 28, 40, 42; *see also* ECF No. 5-12 at 4.) The CGL Policy exclusion provides, in pertinent part, that:

> This insurance does not apply to:
> j. **Professional Services**
> "Bodily injury," [or] "property damages," . . . caused by the rendering or failure to render any professional service. This includes but is not limited to: . . .
> (2) Preparing, approving, or failing to prepare or approve maps, drawings, opinions, reports, surveys, change orders, designs or specifications;
> (3) Supervisory, inspection or engineering services[.]

(Compl. ¶ 28; *see also* ECF No. 1-2 at 118, 121.)

---

Stipulation, the Parties explained that they are "prepared to discuss at oral argument the effects of these factual developments on the Parties' positions set forth in the pending motion papers. Should the Court find it helpful, the parties are also willing to submit supplemental briefing." (ECF No. 13 ¶ 12.) However, neither party suggests that these developments alter what they believe to be the correct outcome with respect to the pending Motion. In addition, the Court's own review of these additional documents leads it to conclude that none of these developments materially alter the disposition of Plaintiff's Motion to Dismiss, Decline Jurisdiction, or Stay (ECF No. 5). Accordingly, the Court concludes that additional briefing with respect to these developments is unnecessary and the pending Motion remains ripe for disposition.

The Umbrella Policy contains a similar exclusion, which provides, in pertinent part, that it too:

> does not apply to 'bodily injury,' 'property damages' or 'personal and advertising injury' arising out of rendering or failure to render any professional services by you or on your behalf, but only with respect to the following operations:
> a. Providing engineering, architectural, or surveying services to others in your capacity as an engineer, architect or surveyor; and
> b. Providing or hiring independent professionals to provide engineering, architectural, or surveying services in connection with construction work you performed.

(Compl. ¶ 40; *see also* ECF No. 1-7 at 27.)

The same day that CNA issued its declination letter, it filed the instant Complaint. (*See* Compl. (filed August 4, 2021); ECF No. 5-12 (issued August 4, 2021).) The Complaint primarily requests that this Court "determine and declare [that] CNA has no duty under the [Policies] to defend or indemnify Morabito in connection with the Underlying Lawsuits." (Compl. at 16–17.)[2] In addition to relying on the exclusions outlined above, the Complaint also avers that, even if the exclusions did not apply, Morabito has failed to satisfy certain coverage conditions required by the Policies. (*See* Compl. ¶¶ 31–32, 44.)

In response, on October 5, 2021, Morabito filed a parallel action in the Circuit Court for Miami-Dade County, Florida (the "Florida Coverage Action"). (*See* ECF No. 5-6.) That complaint named not only CNA, but also the Association and the plaintiffs in the Underlying Lawsuits as defendants. (*Id.*) Despite the inversion of the parties and the additional defendants, the gravamen of that lawsuit is also CNA's duties under the Policies. Specifically, Morabito seeks a declaration from the Florida court that "CNA *has* a duty to defend Morabito against the Underlying Lawsuits." (*Id.* ¶ 95 (emphasis added).) Morabito then filed the currently pending Motion. (*See id.* (filed October 5, 2021); ECF No. 5 (filed (October 5, 2021).)

---

[2] The Complaint also requests an award of attorney's fees and costs. (Compl. at 16–17.)

## II.    Legal Standards

In its Motion, Morabito seeks to dismiss or stay this case on three independent procedural grounds. First, it argues that the Court *must* dismiss the case pursuant to Federal Rule of Civil Procedure 12(b)(7) for CNA's failure to join parties that are both necessary and indispensable under Rule 19. (*See* ECF No. 5-1.) Second, it alternatively argues that this Court *should* decline to exercise jurisdiction under 28 U.S.C. § 2201(a), the Declaratory Judgment Act, and dismiss this case. (*See* ECF No. 5-2.) Third and finally (and also alternatively), it requests that the Court stay this case pending resolution of the Florida Coverage Action. (*See* ECF No. 5-3.)

### A.  Rule 12(b)(7)

Federal Rule of Civil Procedure 12(b)(7) allows a party to move to dismiss for "failure to join a party under Rule 19." Dismissal is required if a party is indispensable. *See Owens-Illinois, Inc. v. Meade*, 186 F.3d 435, 440 (4th Cir. 1999). Determining whether a party that has not been joined is "an indispensable party involves a two-step inquiry." *R-Delight Holdings, LLC v. Anders*, 246 F.R.D. 496, 498 (D. Md. 2007) (citing *Owens-Illinois*, 186 F.3d at 440).

"[C]ourts must first ask 'whether a party is necessary to a proceeding because of its relationship to the matter under consideration' pursuant to Rule 19(a)." *Owens-Illinois*, 186 F.3d at 440 (quoting *Teamsters Loc. Union No. 171 v. Keal Driveaway Co.*, 173 F.3d 915, 917–18 (4th Cir. 1999)). An absent party is necessary under Rule 19(a) if:

> in that person's absence, the court cannot accord complete relief among existing parties; or that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may [·] as a practical matter impair or impede the person's ability to protect the interest; or leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A), (B) (section marks omitted).

4

Where "a party is necessary, it will be ordered into the action." *Owens-Illinois*, 186 F.3d at 440. However, where "joinder is not feasible [such as]: when venue is improper, when the absentee is not subject to personal jurisdiction, [or] when joinder would destroy subject matter jurisdiction," *Barnhardt v. Scottsdale Ins. Co.*, Civ. No. LPA-13-0637, 2014 WL 98803, at *5 n.3 (M.D.N.C. Jan. 9, 2014) (quoting *EEOC v. Peabody W. Coal Co.*, 400 F.3d 774, 789 (9th Cir. 2005)), the court "must determine whether the proceeding can continue in [the party's] absence, or whether it is indispensable pursuant to Rule 19(b)." *Owens-Illinois*, 186 F.3d at 440. In determining whether a proceeding may continue in the absence of a necessary party, the court should consider:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>> (A) protective provisions in the judgment;
>> (B) shaping the relief; or
>> (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder."

Fed. R. Civ. P. 19(b). "Courts are loath to dismiss cases based on nonjoinder of a party, so dismissal will be ordered only when the resulting defect cannot be remedied and prejudice or inefficiency will certainly result." *Owens-Illinois*, 186 F.3d at 440.

### B. Discretionary Dismissal Under 28 U.S.C. § 2201

"Under the Declaratory Judgment Act, a district court, in 'a case of actual controversy within its jurisdiction . . . *may* declare the rights and other legal relations of any interested party seeking such declaration.'" *Trustgard Ins. Co. v. Collins*, 942 F.3d 195, 201 (4th Cir. 2019) (quoting 28 U.S.C. § 2201(a)) (emphasis in original). The permissive language in the "Act gives federal courts discretion to decide whether to declare the rights of litigants. . . . Rather than grant

litigants a right to judgment in their case, it merely permits the courts to hear those cases." *Id.*
While "district courts have great latitude in determining whether to assert jurisdiction over
declaratory judgment actions," *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.*, 139 F.3d 419, 422
(4th Cir. 1998), they are not "without guidance in exercising this discretion." *United Capitol Ins.
Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). A declaratory judgment "is appropriate when
the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and
. . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving
rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

Further, "whenever a parallel proceeding is pending in state court, district courts must also
take into account 'considerations of federalism, efficiency, and comity'" in determining whether
to retain jurisdiction over a declaratory judgment action. *Kapiloff*, 155 F.3d at 493 (quoting
*Nautilus Ins. Co. v. Winchester Homes, Inc.*, 15 F.3d 371, 376 (4th Cir. 1994)). The Fourth Circuit
has identified four key factors for consideration to assess whether a court should retain jurisdiction:

> (1) whether the state has a strong interest in having the issues decided in its courts;
> (2) whether the state courts could resolve the issues more efficiently than the federal
> courts; (3) whether the presence of "overlapping issues of fact or law" might create
> unnecessary "entanglement" between the state and federal courts; and (4) whether
> the federal action is mere "procedural fencing," in the sense that the action is merely
> the product of forum-shopping.

*Id.*

### C. Discretionary Stay

"The power to stay proceedings is incidental to the power inherent in every court to control
the disposition of the causes on its docket with economy of time and effort for itself, for counsel,
and for litigants." *Maryland v. Univ. Elections., Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting
*Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). The Supreme Court has confirmed "federal
courts' inherent authority to . . . stay an action pending the outcome of parallel proceedings in

another court." *United States v. Oliver*, 878 F.3d 120, 124 (4th Cir. 2017) (citing *Landis*, 299 U.S. at 254). In determining whether to exercise this authority, courts consider various factors "includ[ing] the interests of judicial economy, the hardship and equity of the moving party in the absence of a stay, and the potential prejudice to the non-moving party in the event of a stay." *Landress v. One Solar LLC*, 243 F. Supp. 3d 633, 646 (M.D.N.C. 2017) (citation omitted). However, it is well-established that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward" before a court will stay a case in deference to a parallel proceeding. *Landis*, 299 U.S. at 255.

## III.    Analysis

Morabito's first argument is that the inability to join either the Association or the plaintiffs in the Underlying Lawsuits (the "Victims" and, collectively with the Association, the "Rule 19 Parties") in this action warrants dismissal under Rule 12(b)(7). Because the Court concludes that neither of the Rule 19 Parties is necessary to this action, it does not further consider whether either is indispensable. The former conclusion is sufficient to find that mandatory dismissal under Rule 12(b)(7) is unwarranted.

Alternatively, Morabito requests that this Court exercise its discretion to dismiss or stay this matter due to the parallel litigations pending in Florida. Given the particular circumstances presented by this case, and the Florida cases, the Court concludes that a discretionary stay or declination of jurisdiction would be inappropriate.

### A. Rule 19 Necessary Parties

As noted above, "Rule 19(a) allows several avenues for finding that a party is 'necessary.'" *Pillar to Post, Inc. v. Md. Home Inspectors, Inc.*, Civ. No. DKC-18-3761, 2020 WL 1158683, at *3 (D. Md. Mar. 10, 2020). Here, Morabito argues that two of those avenues, Rules 19(a)(1)(B)(i)

7

and (ii), require finding that both Rule 19 Parties are necessary to this case. (*See* Mot. Dismiss Mem. Supp. at 8, ECF No. 5-4.)  Further, "a court with proper jurisdiction may also consider *sua sponte* the absence of a required person and dismiss for failure to join." *Gunvor SA v. Kayablian*, 948 F.3d 214, 220 (4th Cir. 2020).  Consideration of the parties' arguments, as well as the various documents they have proffered in support of those arguments, confirms that neither of the Rule 19 Parties is necessary to the present action.

### 1. *The Association*

Morabito principally argues that the Association is a necessary party under Rule 19(a)(1)(B)(i) because of its status as an additional insured under the Policies from November 1, 2019 to November 1, 2021.[3]  (Mot. Dismiss Mem. Supp. at 8.)  Rule 19(a)(1)(B)(i) renders an absent party necessary where "that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may as a practical matter impair or impede the person's ability to protect the interest."  Fed. R. Civ. P. 19(a)(1)(B)(i).  A determination of coverage by this Court, Morabito avers, would "as a practical matter impair or impede the [Association's] ability to protect" its interests under the Policies. *Id.*; (*see also* Mot. Dismiss Mem. Supp. at 9.)

Importantly, the Policies provide coverage for principal insureds (Morabito) and additional insureds (such as the Association) in different clauses.  With respect to coverage for the principal insured, the Policies contain exclusions for injuries "caused by the rendering or failure to render any professional service."  (ECF No. 1-4 at 117.)  In addition, the Policies include a separate

---

[3] Morabito argues that the Association is an "additional insured" under the versions of the Policies that covered Morabito from November 1, 2019 to November 1, 2021. (*See* Mot. Dismiss Mem. Supp. at 8.) Although CNA refers to the Association as a "purported additional insured" through its briefing, it does not seriously dispute the Association's status as an additional insured at this stage. (*See, e.g.*, ECF No. 8 at 2.) The Court assumes, *arguendo*, that the Association is an "additional insured" within the meaning of the Policies for the remainder of this Memorandum. Because it concludes that, even if the Association is an additional insured, it is not a Rule 19 necessary party, the Court need not definitively resolve the Association's status under the relevant policies here.

coverage provision for "any person or organization whom [the principal insured is] required to add as an additional insured on this policy under a written contract or written agreement." (*Id.* at 96.) Similar to coverage for the principal insured, coverage for additional insureds is limited by an exclusion that provides "insurance provided to the additional insured does not apply to [covered injuries] arising out of an architect's, engineer's, or surveyor's rendering of or failure to render any professional services including . . . ." (*Id.*) For three reasons, this Court's interpretation of the principal insuring language would not, as a practical matter, impair or impede the Association's interest in obtaining coverage as an additional insured. *See* Fed. R. Civ. P. 19(a)(1)(B)(i).

### a. *Interest in the Subject of the Action*

As an initial matter, the Association does not "claim[] an interest relating to the subject of the action" under Rule 19 given that coverage for principal and additional insureds are governed by separate portions of the Policies. *Id.* at 19(a)(1)(B). In *McKiver*, the Fourth Circuit explained that its prior Rule 19 caselaw that found non-joined contractual parties necessary involved "situation[s] where the contracts or obligations of the 'necessary' party were being interpreted or were otherwise directly at issue." *McKiver v. Murphy-Brown LLC*, 980 F.3d 937, 951 (4th Cir. 2020). This case does not require the Court to interpret the language applicable to additional insureds nor to directly resolve the question of whether CNA owes the Association coverage as an additional insured.[4]

---

[4] Notably, the language applicable to additional insureds limits its professional service exclusion to the professional services of architects, engineers, or surveyors. (ECF No. 1-4 at 96.) In contrast, the professional services exclusion for the principal insured identifies a far broader set of professional services including for, *inter alia*, "service, treatment, advice or instruction for the purposes of appearance of skin enhancement, hair removal or replacement or personal grooming; . . . [b]ody piercing services; . . . [and m]ortician services[.]" (*Id.* at 117.) Given these different textual contexts, this Court's interpretation of the latter provision would not necessarily control another court's interpretation of the former. This is not, therefore, a situation where a subsequent litigation would implicate "identical [ ] contracts and factual allegations" and potentially lead to "incongruous results." *See Gilliand v. Koch Trucking, Inc.*, Civ. No. JFM-11-3073, 2015 WL 2395148, at *5 (D. Md. May 19, 2015) (finding non-joined party necessary where it would potentially be liable under exact same contract provision for exact same conduct as existing party).

Although a determination as to Morabito's coverage under the Policies may guide a future court's interpretation of the separate provisions applicable to the Association, "a person does not become a necessary party to an action simply because the determination of the action will affect that person's rights under a separate or subsequent contract." *Redner's Market, Inc. v. Joppatowne G.P. Ltd. Partnership*, 918 F. Supp. 2d 428, 436 (D. Md. 2013) (collecting cases). Similarly, the potential collateral consequences to the Association from this Court's interpretation of the principal coverage provisions are insufficient to make it a necessary party in this action.

Also distinct is the Association's interest with respect to CNA's alternative grounds for denying Morabito coverage, i.e., the failure to establish certain conditions precedent for coverage. (Compl. ¶¶ 52, 61.) Like the coverage provisions, the Policies also contain distinct clauses defining conditions precedent for coverage for principal and additional insureds. With respect to the principal insured, those provisions require the principal insured "to notify and cooperate with CNA in the event of a claim or suit against the insured." (*Id.* ¶ 31; *see also* ECF No. 1-4 at 123.) While the endorsement providing coverage for additional insureds imposes similar requirements, the onus for satisfying those conditions is on the additional insured. (ECF No. 1-4 at 97 ("[CNA has] no duty to defend or indemnify an additional insured under this endorsement until [CNA receives] written notice of a claim or 'suit' from the additional insured.").) Thus, any determination in this matter about whether Morabito satisfied the conditions precedent to coverage under the Policies would have no bearing on whether the Association did the same. *Cf. Nat. Union Fire Ins. Co. of Pitt., PA v. Rite Aid of S.C., Inc.*, 210 F.3d 246, 251 (4th Cir. 2000) (concluding that contract principal was necessary party to action involving third-party beneficiary where contract principal was the "contract party and the party charged with receiving and giving notice of claims under the policy" for both principal and third party beneficiary).

In this case, neither the "contracts or obligations of the 'necessary' party [are] being interpreted or [are] otherwise directly at issue." *McKiver*, 980 F.3d at 951. Put another way, adjudicating Morabito's rights under the Policies does not "require the court to adjudicate [the Association's] rights and obligation under the [Policies]" because those rights are specified in portions of the Policies that are not before this Court. *Gunvor SA v. Kayablian*, 948 F.3d 214, 221 (4th Cir. 2020). Confirming the collateral nature of the Association's interest in this matter is the fact that it has "not [sought] to join or otherwise claimed an interest relating to the subject of an action before the district court." *McKiver*, 980 F.3d at 951; *see also Corcoran v. Peleus Ins. Co.*, Civ. No. TDC-20-1115, 2021 WL 3472664, at *4 (D. Md. Aug. 6, 2021) (concluding that where putative Rule 19 parties were "aware of the present case but have never claimed an interest in its outcome . . . that neither party is required under Rule 19 and therefore need not be joined."). Indeed, it appears that the Association has nowhere sought to affirmatively assert this interest *at all*, having been sued *by* Morabito in the parallel Florida Coverage Action. (*See* ECF No. 5-6.)

In short, the Association retains significant "ability to protect its own interests" with respect to the Policies. *McKiver*, 980 F.3d at 951 (describing this ability as the touchstone for determining Rule 19 necessity on the basis of impairment of interest). Its decision not to do so in the face of various litigations indirectly implicating those interests is telling. *Id.*. It suggests that "pragmatically, in the context of the substance of [this] case[,]" *Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 433 (4th Cir. 2014) (citation omitted), a declaration of Morabito's rights under the Policies will not, "as a practical matter, impair or impede" the Association's ability to assert its interests related to separate and distinct clauses of the Policies. Thus, absent a more exact showing that the Association's "contracts or obligations . . . [are] being interpreted or otherwise

11

*directly* at issue" here, the Court cannot find that it is a necessary party to this action. *McKiver*, 980 F.3d at 951 (emphasis added).

### b. Present Interest in this Action

Even if the Association has an interest in the interpretation of the clauses in the Policies before this Court, it does not appear that any such interest would be ripe at this time. To find that a party is necessary, the party must have an "interest [that is] 'more than a financial stake, and more than speculation about a future event.'" *McKiver*, 980 F.3d at 952 (quoting *Ward v. Apple, Inc.*, 791 F.3d 1041, 1050 (9th Cir. 2015)). Further review of the Policies shows that the Association's interest in those contracts is predicated on a speculative future event.

Specifically, the Additional Insured Endorsement disclaims CNA's "duty under Business Liability insurance to defend the additional insured against any 'suit' if any other insurer has a duty to defend the additional insured against that 'suit.'" (*See* ECF No. 1-4 at 97.) Neither party suggests that the Association has no other insurance such that CNA would be required to defend the Association in any of the Underlying Lawsuits.[5] Thus, the only interest in the Policies that the Association may have is potential indemnification with respect to the Underlying Lawsuits.

Under Maryland law, however, "the duty to indemnify depends upon liability," and "is triggered only if the insured's *established* liability is actually covered under the policy." *Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 509 (D. Md. 2019) (emphasis modified) (quoting *Walk v. Hartford Cas. Ins. Co.*, 852 A.3d 98, 106 (Md. 2004)).[6] Given that the Underlying Lawsuits have not yet reached a determination as to the Association's liability in this matter, any

---

[5] Rather, the pleadings suggest that multiple policies are implicated in the Underlying Lawsuits, with CNA alleging that Morabito is presently being defended by a different carrier in those cases. (*See* Compl. ¶ 20.)

[6] Although neither party suggests that Florida law would apply to interpreting the endorsement applicable to additional insureds, the rule with respect to when the duty to indemnify is triggered appears to be the same under Florida law. *See Estate of Covington v. Young*, 521 So. 2d 360, 360 (Fl. Dist. Ct. App. 1988) ("The entry of judgment against Covington on the claim of indemnity, prior to any finding of liability in favor of the plaintiff on the main claim, constitutes premature action on the part of the trial court.") (collecting cases).

litigation regarding CNA's duty to indemnify the Association is not yet ripe. As a further caveat, even if liability were established, such liability would also need to exceed all of the Association's other, applicable insurance policies (to the extent such insurance policies exist), as additional insured coverage under the Policies is limited to coverage in "excess over any other insurance available to the additional insured, whether primary, excess, contingent or on any other basis." (ECF No. 1-4 at 97.) Thus, for the Association to have any interest in indemnity under the Policies would require (1) a finding of liability in the Underlying Lawsuits; (2) that is arguably covered by the Policies, and (3) that exceeds the amounts covered under the Association's other insurance. While all three predicates may certainly occur, at this time "a declaratory judgment [on indemnification] is premature, as it resolves a question that may never become ripe, based on facts that are purely hypothetical." *Allstate Ins. Co. v. Preston*, Civ. No. JKB-19-0429, 2019 WL 3067918, at *3 (D. Md. May 12, 2019). Thus, the fact that none of these three predicates (much less all three) has occurred means that the Association's interest in this litigation is too speculative to render it a necessary party. *See McKiver*, 980 F.3d at 952.

### c. *Unrepresented Interest*

Last, even if the Association had a present interest in this case, that interest would be effectively represented by Morabito. Under Morabito's view (where the Association is a necessary party), CNA denied coverage to the Association "for the same reasons as its denial of coverage to Morabito" and accordingly "the Association has a direct interest in the determination as to CNA's duty to provide coverage as to Morabito." (Mot. Dismiss Mem. Supp. at 9.) Adopting this view, which appears to be inconsistent with the policy language outlined above, still would not render the Association a necessary party in this matter.

13

As the Fourth Circuit has explained, "a litigant may serve as a proxy for an absent party if the interests of the two are identical." *Ohio Valley Env. Coalition v. Bulen*, 429 F.3d 493, 505 (4th Cir. 2005) (citing *Nat'l Union Fire Ins. Co. v. Rite Aid of S. Car., Inc.*, 210 F.3d 246, 250–51 (4th Cir. 2000)). Under Morabito's view of the Policies, its interests are identical to those of the Association—both parties seek to challenge denial of coverage under the Policies, denials that were predicated on the "same reasons" for both Morabito and the Association. (Mot. Dismiss Mem. Supp. at 9.) As has been observed in related contexts, this identity of interests creates a presumption of adequate representation that Morabito has not attempted to rebut. *See Penn. Nat. Mut. Cas. Ins. Co. v. Perlberg*, 268 F.R.D. 218, 225 (D. Md. 2010) (quoting *Virginia v. Westinghouse Elec. Corp.*, 542 F. 2d 214, 216 (4th Cir. 1976)) ("When the party seeking intervention has the same ultimate objective as a party to the suit, a presumption arises that its interests are adequately represented, against which the petitioner must demonstrate adversity of interest, collusion or nonfeasance."). Thus, to the extent the Association's interests under the Policy amount to litigating whether the professional services exclusion in the Policies applies to the allegations in the Underlying Lawsuits, those interests are adequately represented by Morabito. *See Ohio Valley*, 429 F.3d at 505 (finding adequate representation where both present and absent litigant sought "to protect investment and reliance interests that would be upset by invalidation of [a permit]"); *cf. Nat'l Union Fire Ins. Co.*, 210 F.3d at 250 (declining to find adequate representation where present litigant's interests under contract were more limited than those of the absent party). This adequate representation means that "as a practical matter" the Association's interests would not be "impair[ed] or impede[d]" by its absence from this case. Fed. R. Civ. P. 19(a)(1)(B)(i).

14

### d. Inconsistent Obligations

Further, failure to join the Association would not "leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations[,]" a situation that would independently render the Association necessary to this action. Fed. R. Civ. P. 19(a)(1)(B)(ii). Here, non-joinder of the Association could result in a situation where this Court determines that CNA owes insurance coverage to Morabito while another court determines that CNA does not owe coverage to the Association, or vice-versa. While these outcomes could be logically inconsistent (though not necessarily, as they would flow from different clauses in the Policies), the plain text of Rule 19 "compels joinder of an absentee to avoid inconsistent *obligations*, and not to avoid inconsistent adjudications. It is not triggered by the possibility of a subsequent adjudication that may result in a judgment that is inconsistent as a matter of logic." *United States v. Webb*, Civ. No. WEB-13-0042, 2014 WL 1870732, at *4 (E.D.N.C. May 8, 2014) (collecting cases); *see also* Fed. R. Civ. P. 19(a)(1)(B)(ii). Even in a scenario where there was a divergence in interpretation of the Policy, CNA would not be subject to inconsistent obligations.

To describe an outcome where CNA was required to indemnify only one insured as imposing inconsistent obligations would be a "conflation [that] fails to account for the fact that [an insurer] has an *independent* obligation to insure [ ] an additional insured." *Travelers Property Cas. Co. of Am. v. Liberty Mut. Ins. Co.*, 444 F.3d 217, 224 (4th Cir. 2006) (emphasis in original). Even though CNA's obligations to Morabito and the Association are closely related, they are "separate and unique" such that they cannot create the sort of inconsistent obligation that would render the Association a necessary party to this action. *Webb*, 2014 WL 1870732, at *4.

The separability of potential obligations owed by CNA also distinguishes this case from the cases where the Fourth Circuit has concluded that divergent contractual interpretations by

15

courts created the possibility of inconsistent obligations. The consistent theme in those cases is that two courts would be required to interpret provisions of a contract—most often, arbitration provisions—that would impose irreconcilable obligations on an existing party. *See Home Buyers Warranty Corp. v. Hanna*, 750 F.3d 427, 435 (4th Cir. 2014) (finding absent party necessary where "[o]ne court could enforce the arbitration clause while another finds it unenforceable"); *Owens-Illinois*, 186 F.3d at 441 (same); *Tough Mudder LLC v. Sengupta*, 614 F. App'x 643, 645 (4th Cir. 2015) (finding a party necessary where defendant "faced the substantial risk of inconsistent obligations regarding the validity of the arbitration provision, potentially causing her to simultaneously pursue her claims through arbitration and trial"); *see also Gilliand*, 2015 WL 2395148 (concluding party was necessary where litigation could result in divergent conclusions as to whether plaintiffs were owed overtime pay under employment contract). This is simply not such a case. While CNA owing coverage to one insured but not the other may be difficult to reconcile as a matter of logic, the obligations imposed by such outcomes are readily reconcilable—CNA would simply indemnify one insured but not the other. *See Webb*, 2014 WL 1870732, at *4 (finding party not necessary where "a subsequent adjudication may result a judgment that is [only] inconsistent as a matter of logic").

In sum, the Association is not a necessary party to this action for various reasons. It has asserted no interest, and appears to have no present interest in the question of whether CNA owes Morabito a duty to defend or coverage under the Policies. Further, to the extent it has an interest in the presently pending litigation, that interest is adequately represented by Morabito, and parallel or subsequent adjudication of that interest would not leave CNA with inconsistent obligations under the Policies. For all these reasons, the Court concludes that the Association is not a

necessary party under Federal Rule of Civil Procedure 19(a) and does not consider whether it is an indispensable party under 19(b).

### 2. The Victims

"When an insurer brings a declaratory judgment action against its insured, the underlying claimants are usually, but not always, necessary parties to the insurance dispute." *Zurich Am. Ins. Co. v. Covil Corp.*, Civ. No. CCE-18-0932, 2019 WL 3205676, at *5 (M.D.N.C. July 16, 2019) (collecting cases). For two reasons, this case is of the "not always" variety.

First, given that there has been no finding of liability in the Underlying Lawsuits, it is not clear that the Victims have an interest in this case that is "more than speculation about a future event." *McKiver*, 980 F.3d at 952; *see also Zurich Am. Ins. Co.*, 2019 WL 3205676, at *4 ("There is some uncertainty as to whether claimants who do not have a judgment or settlement with [the insured] have a cognizable interest in this litigation under Rule 19(a)(1)(B).").

Second, and more importantly, to the extent that the Victims' interests are implicated by this lawsuit, they are adequately protected by Morabito's own interest in obtaining coverage under the Policies. *See Winklevoss Consultants, Inc. v. Fed. Ins. Co.*, 174 F.R.D. 416, 418 (N.D. Ill. 1997) ("When faced squarely with the question whether the injured party is even a necessary party [to an action between an insured and an insurer], requiring joinder instead of dismissal, our colleagues [ ] have again answered 'no.'"); *see also Zurich Am. Ins. Co.*, 2019 WL 3205676, at *5. To be sure, the non-joinder of the Victims "raises the specter of an uninvolved defendant-insured failing to protect the injured claimant's interests." *Winklevoss Consultants*, 174 F.R.D. at 418–19. But that specter is illusory here where Morabito has made clear its interest is in obtaining and maximizing the insurance coverage available under the Policies. As other courts have observed, "[w]hen an insured sues its insurer for a declaration of coverage, the injured party's

17

interest is presumed to be adequately protected, thus making the insured and injured party's interest so sufficiently similar that joinder of the injured party is unnecessary." *Employers Mut. Cas. Co. v. Witham Sales & Servs., Inc.*, Civ. No. APR-08-0233, 2009 WL 4281457, at *5 (N.D. Ind. Nov. 23, 2009). Although it would prefer to do so in Florida, Morabito's intent to vigorously litigate the question of insurance coverage under the Policies means, "as a practical matter[,]" the Victims non-joinder will not "impair or impede [their] ability to protect [their] interest" with respect to ensuring coverage if Morabito is ultimately found liable in the Underlying Lawsuits. Fed. R. Civ. P. 19(a)(1)(B)(i); *see also Zurich Am. Ins.*, 2019 WL 3205676, at *5 (concluding that insured's filing of parallel lawsuit seeking coverage determination rebutted "presumption that [insured] will not protect the interests of the absent claimants"). Accordingly, the Victims are not a necessary party to this action, and the Court need not consider whether they are indispensable under Federal Rule of Civil Procedure 19(b).

Having concluded that neither of the Rule 19 Parties is necessary to this case, the Court now turns to Morabito's prudential arguments that this Court should decline jurisdiction or stay this matter in favor of the parallel litigation occurring in Florida state court.

### B. Declination of Jurisdiction under the Declaratory Judgment Act[7]

In the alternative to mandatory dismissal for failure to join a necessary party under Federal Rule of Civil Procedure 12(b)(7), Morabito argues that this Court should "decline to exercise jurisdiction over CNA's request for declaratory relief." (Mot. Dismiss Mem. Supp. at 16.) Because under 28 U.S.C. § 2201(a), a federal court "*may* declare the rights and other legal relations

---

[7] Some decisions have framed the declination of jurisdiction over cases seeking only declaratory judgments as a form of abstention under the *Brillhart/Wilton* line of cases. *See Nautilus Ins. Co. v. 200 W. Cherry St., LLC*, 383 F. Supp. 3d 494, 505 (D. Md. 2019) ("The inherent discretion of a federal court to abstain from entertaining a declaratory action is often referred to as *Wilton/Brillhart* abstention or *Wilton* abstention."); *see also Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995); *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491 (1942). Accordingly, this Memorandum uses the phrases "abstain" and "decline jurisdiction" interchangeably in its analysis of the propriety of hearing this case in light of the parallel Florida litigation.

of any interested party[,]" it has "discretion to decide whether to [assert jurisdiction and] declare the rights of litigants." *Trustgard Ins. Co.*, 942 F.3d at 201. Here, in light of the parallel insurance action in Florida, the parties agree that the exercise of that discretion should be guided by the factors enumerated in *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). (*See* Mot. Dismiss Mem. Supp. at 16–20 (applying *Kapiloff* factors), ECF No. 8 at 14–18 (same).) Those factors are "(1) whether the state has a strong interest in having the issues decided in its courts; (2) whether the state courts could resolve the issues more efficiently than the federal courts; (3) whether the presence of 'overlapping issues of fact or law' might create unnecessary 'entanglement' between the state and federal courts; and (4) whether the federal action is mere 'procedural fencing,' in the sense that the action is merely the product of forum-shopping." *Kapiloff*, 155 F.3d at 493–94.

These factors are not "a mechanical checklist, but rather should [be applied] flexibly in light of the particular circumstances of each case." *VRCompliance LLC v. HomeAway, Inc.*, 715 F.3d 570, 573 (4th Cir. 2013) (internal quotation marks omitted). "In general, where two parallel suits are pending in state and federal court, the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *Id.*; *accord HIITT Contracting, Inc. v. Hartford Fire. Ins. Co.*, Civ. No. PX-20-2880, 2021 WL 2352281, at *5 (D. Md. June 9, 2021); *Evanston Ins. Co. v. Dan Ryan Builders, Inc.*, Civ. No. MJG-15-3419, 2017 WL 262620, at *6 (D. Md. Jan. 20, 2017). Here, an assessment of the *Kapiloff* factors does not warrant departing from this general rule.

### 1. *State Interest*

Neither state has a strong interest in this matter. Even where a "case is entirely one of state law" where "the issues involved are standard ones of agency and contract interpretation" the state

interest is "not particularly significant" because "[a] federal court would be unlikely to break new ground or be faced with novel issues of state interest." *Kapiloff*, 155 F.3d at 494. Here, the interest of a Florida court in applying routine contract law is minimal, and even less so because interpretation of the Policies is likely governed by Maryland law. *See Hartford Cas. Ins. Co. v. Wugin*, 247 F. Supp. 2d 723, 727 (D. Md. 2003) ("The interpretation of the insurance policy in this action is unlikely to turn on a novel question of law, regardless of whether California or Maryland law applies. As a result, this factor does not favor either side."); (*see also* ECF Nos. 8 at 15 n.4 (arguing Maryland law applies to interpretation of the Policies), 11 at 2 (citing Maryland law in argument about interpretation of the Policies).)

Morabito argues that this factor favors abstention because "Florida has a strong interest in having the issues decided in its courts because the Association and many of the Victims are Florida citizens." (Mot. Dismiss Mem. Supp. at 17.) While interference with the Underlying Lawsuits is certainly a significant consideration, the Court believes it is better addressed under the third *Kapiloff* factor, undue entanglement. The first factor is more driven at considerations of the legal questions posed by a case, and whether "federal adjudication would be disruptive of state efforts to establish a coherent *policy* with respect to a matter of substantial public concern." *Riley v. Dozier Internet Law, PC*, 371 F. App'x 399, 403 (4th Cir. 2010) (internal quotation marks omitted) (emphasis added); *see also State Farm Fire and Cas. Co. v. Thomas*, 217 F.3d 840, 2000 WL 763612, at *2 (4th Cir. 2000) (table) (concluding that first factor did not favor abstention where "issues of law presented are not genuinely novel because they involve standard principles of contract interpretation"). Thus, while the Court is sensitive to potential disruptions of the Underlying Lawsuits, this is not the best point in the *Kapiloff* rubric to address those concerns. Because a federal decision in this matter would not usurp an opportunity for a Florida court to

address a novel or complex question of Florida law, the first factor does not favor declining jurisdiction.

### 2. *Efficiency*

On first impression, this factor appears to favor declining jurisdiction. The Florida Coverage Action has as defendants both the Association and the Victims. (*See* ECF No. 5-6 (Complaint in Florida Coverage Action).) While this Court has determined that those parties are not "necessary" in the Rule 19 sense, both certainly have some interest in the subject matter of this litigation. Thus, there may be a risk that litigation in this Court between only Morabito and CNA would "produce inefficiencies by needlessly duplicating efforts, generating piecemeal litigations, and expending limited judicial resources." *Riley*, 2000 WL 1141079, at *4; *see also Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 258 (4th Cir. 1996) (affirming abstention as appropriate where "the state court actions contains a defendant and a number of issues not present in the federal action . . . [meaning] issuance of a declaratory judgment would settle part of the controversy [but] would not settle the entire matter"). However, a further examination of the "particular circumstances" of this case shows that any efficiencies gained by deferring to the Florida proceeding would be marginal. *VRCompliance*, 715 F.3d at 573.

The reason these efficiencies are not as significant as they initially seem is that, as explained above, litigation by the Association or the Victims related to the Policies is premature. *See supra* Parts III.A.1.b, III.A.2. Although both parties may, after resolution of the Underlying Lawsuits, have significant interests in indemnity under the Policies, at this point "a declaratory judgment is premature, as it resolves a question that may never become ripe, based on facts that are purely hypothetical." *Allstate Ins. Co. v. Preston*, Civ. No. JKB-19-0429, 2019 WL 3067918, at *3 (D. Md. May 12, 2019). Indeed, it "could be *inefficient* for [a] court to decide questions of

indemnity prior to resolution of the Underlying [Lawsuits], as any declaratory judgment regarding [CNA's] responsibility" to indemnify any party could be mooted by the disposition of the Underlying Lawsuits. *Allstate Ins. Co. v. Powe*, Civ. No. CCB-19-1376, 2020 WL 1159000, at *3 (D. Md. Mar. 10, 2020) (emphasis added). As such, "the scope of the pending state court proceeding" is, at this time, identical to this case—both are limited to answering a single question prior to the resolution of the Underlying Lawsuits: does CNA have a duty to defend Morabito? *See Penn. Nat. Mut. Casualty Ins. Co. v. Levitas*, Civ. No. CCB-16-2060, 2017 WL 25374, at *3 (D. Md. Jan. 3, 2017).[8]

Given that this question is controlled by Maryland law, this Court is in fact the more efficient forum, given its relative expertise. *See Minn. Lawyers Mut. Ins. Co. v. Antonelli, Terry, Stout & Kraus, LLP*, 335 F. App'x 698, 703 (4th Cir. 2009) ("[T]he U.S. District Court for the Eastern District of Virginia was asked to interpret Virginia law, and the pending suit is in Florida. It is unreasonable to conclude that a Florida state court is a better arbiter of Virginia law than the Eastern District of Virginia."). Further, while this Court could not ultimately resolve any collateral issues regarding CNA's potential obligations to the Association or the Victims, a resolution of the question whether CNA has a duty to defend Morabito would be likely to significantly streamline, or perhaps even eliminate the need for, additional proceedings to resolve that question following resolution of the Underlying Lawsuits. Accordingly, under the particular circumstances of this case, significant efficiencies would not obtain from this Court's abstention. In fact, it is more

---

[8] Of course, resolution of this single question may have collateral consequences for other issues presented in this dispute. For example a conclusion that Morabito failed to satisfy certain conditions precedent to coverage will allegedly foreclose both CNA's duty to defend and its duty to indemnify. (Compl. ¶¶ 52–53, 61–62.) These collateral consequences do not, however, go to the question of which court is positioned to more efficiently resolve the present disputes between the parties.

efficient for this Court to retain jurisdiction over the only currently pending issue, which is one of Maryland law. See *Id.*

Thus, absent a showing that "the state suit was filed before the federal suit [or t]he state proceeding is [ ] further along than the federal action," the second *Kapiloff* factor favors retaining jurisdiction. *See Riley*, 371 F. App'x at 403 (finding that both facts favored abstention). Although the former fact does not apply here,[9] Morabito suggests that "the Florida Court could resolve the issues more efficiently than this Court, given that the Florida Coverage Action would likely be consolidated for discovery and other pre-trial purposes with the underlying tort actions." (Mot. Dismiss Mem. Supp. at 17.) This argument is unconvincing for two reasons.

First, it appears that the expected consolidation of the Florida Coverage Action and the Underlying Lawsuits will not occur. In July 2021, the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida issued an Order consolidating the Champlain Towers South Cases. (*See* ECF No. 8-4.) That Order indicated that "[a]ll future filings and activity related to the Champlain Towers South building collapse will" be consolidated under Case No. 2021-015089-CA-01. (*Id.* at 2.) Despite this Order, the Florida Coverage Action appears to remain on a separate docket from the consolidated Underlying Lawsuits. *See Morabito Consultants, Inc. v. True Honor Holdings, LLC*, Case No. 2021-022670-CA-01 (Fla. Cir. Ct. Filed Oct. 5, 2021). Second, even if the Florida Coverage Action were to be consolidated with the Underlying Lawsuits, Morabito offers no reason to believe that a Florida state court already attempting to resolve over fifty consolidated cases would be in a position to efficiently resolve a matter largely

---

[9] Indeed, the Parties' recently filed Stipulation indicates that the Parties have not even completed briefing CNA's Motion to Dismiss or Stay the Florida Coverage Action, as the "deadline for CNA to file its reply has been extended and is not yet known." (*See* ECF No. 13 ¶ 5.) Assuming that litigation continues to proceed in the same manner as this one, this action is materially further along than the Florida Coverage Action.

collateral to those tort claims, such as the instant insurance coverage dispute. Accordingly, considerations of efficiency cut in favor of retaining jurisdiction over this matter.

### 3. *Entanglement*

The Florida lawsuits do, however, raise concerns of entanglement. The focus on this factor is "whether the presence of overlapping issues of fact or law might create unnecessary entanglement between the state and federal courts." *200 W. Cherry St.*, 383 F. Supp. 3d at 507 (internal quotation marks omitted) (quoting *Kapiloff*, 155 F.3d at 494). In particular, "concern[s] about entanglement turn on what preclusive effect the declaratory judgment action will have on the state action[s]." *Id.* (quoting *Wugin*, 247 F. Supp. 2d at 727). "The risk of such entanglement is especially acute where the same issues being litigated in federal court are already being litigated by the same parties in the related state court action." *VRCompliance*, 715 F.3d at 574. In such cases, courts must be especially aware of the fact that "any factual determination first made in one proceeding would likely have preclusive effect in the other, thus 'frustrating the orderly progress of the other proceeding by leaving the court with some parts of the case foreclosed from further examination but still other parts in need of full scale resolution.'" *Id.* (quoting *Winchester Homes, Inc.*, 15 F.3d at 377, 379 (4th Cir. 1994)) (cleaned up). Here, Morabito argues that this case creates risk of both legal and factual entanglement with both Florida litigations.[10]

---

[10] It appears that CNA has become, at least indirectly, involved in the Underlying Lawsuits despite disclaiming a duty to defend Morabito. That said, its involvement in that matter does not create further concerns of entanglement with the Underlying Lawsuits. CNA's involvement stems from a January 20, 2022 order entered in a class action tort lawsuit that is one of the various Underlying Lawsuits. That order requires mediation between the Victims, Morabito, and the other defendants in that case. (*See* ECF No. 13 ¶ 9.) That order also required "[a]ny insurer that has received a request to defend and/or indemnify against any claim asserted against [Morabito] . . . [to] attend the mediation, regardless of whether the carrier has denied coverage or assumed a defense under a reservation of rights." (*See* ECF No. 13-9 at 2–3.) As a determination of CNA's duty to defend Morabito will not affect its status with respect to that mediation and given that the purpose of this mediation appears to be solely to resolve the tort disputes, the January 20, 2022 order does not create any risk of entanglement beyond those discussed in the remainder of Part III.B.3.

### a. *Legal Entanglement*

Although entanglement concerns can arise where two lawsuits share "overlapping issues of fact [and] *law*," the identity of legal issues is an insufficient concern, standing alone, to overcome the general rule favoring the first-filed lawsuit. *See VRCompliance*, 715 F.3d at 574 (emphasis added); *Penn-Am. Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004) (concluding that legal issues raised in an insurance dispute were insufficient to justify abstention). Were it otherwise, the holistic and flexible approach the *Kapiloff* factors are intended to implement would be of little utility, as the existence of a parallel lawsuit raising the same legal issues would always warrant abstention. *Id.* at 573 (explaining that courts should not apply "the [*Kapiloff*] factors as a mechanical checklist, but rather should apply them flexibly in light of the particular circumstances of each case") (internal quotation marks omitted); *see also Ind-Com Elec. Co.*, 139 F.3d at 423 noting that the existence of a parallel state court proceeding "should be a significant factor in the district court's determination" of whether to exercise jurisdiction over a declaratory judgment action "[b]ut it is not dispositive"). Thus, legal entanglement with the Florida Coverage Action, alone, does not require this Court to decline jurisdiction.

Fourth Circuit precedent confirms that legal entanglement with the Underlying Lawsuits does not warrant abstention in cases analogous to this one. As noted above, the only question either this or the Florida state court is currently effectively positioned to determine is whether CNA has a duty to defend Morabito in the Underlying Lawsuits. *See supra* Part III.B.2. Resolving this question requires no factfinding, as "[t]he obligation of an insurer to defend its insured under a contract provision is determined by the *allegations* in the tort actions." *Aetna Cas. & Sur. Co. v. Cochran*, 681 A.2d 859, 861 (Md. 1995) (emphasis added); *see also Penn-Am. Ins. Co.*, 368 F.3d at 413 ("[T]he duty-to-defend question in this case will not require the district court to resolve

factual questions at all."). Rather, this Court "need only decide the scope of the *contractual* language" and "determin[e] whether *the allegations* of the complaint, if proved, would bring the claim within the coverage of the [Policies]." *Penn-Am. Ins. Co.*, 368 F.3d at 413 (emphases in original). A "district court can resolve [such a] coverage dispute . . . without [ ] entanglement." *Id.* Thus, absent some indicia of factual entanglement between this Court and the Florida courts or another *Kapiloff* factor weighing in favor of abstention, the existence of duplicative legal issues here and in the Florida Coverage Action does not displace the presumption in favor of the first-filed lawsuit.

### b. *Factual Entanglement*

Morabito argues that one feature of Maryland law distinguishes this case from other cases concluding that insurance disputes raising duty-to-defend questions do not create entanglement issues with parallel proceedings in state court. *See Penn-Am. Ins. Co.*, 368 F.3d at 413 (applying Virginia law). Namely, "in Maryland, an insurer's duty to defend is not determined solely by the eight corner rule (reviewing the complaint and policy) but rather includes consideration of extrinsic evidence." *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d 98, 104 (Md. 2004). Morabito argues that this creates a "possibility that th[is] Court will consider extrinsic evidence to assist in making [the duty to defend] determination." (ECF No. 11 at 2.) This, Morabito avers, would create a risk of factfinding related to the Underlying Lawsuits and create undue entanglement between this Court and the Florida courts.

### i. *Extrinsic Evidence in Duty-to-Defend Cases*

In the "particular circumstances of [this] case," however, these risks are insufficient to justify abstention. *VRCompliance*, 715 F.3d at 573. Importantly, consideration of extrinsic evidence in determining an insurer's duty to defend is limited to narrow and specific

26

circumstances. First, "[a]n insured may rely on extrinsic evidence [only] where the underlying complaint 'neither conclusively establishes nor negates a potentiality of coverage.'" *Id.* (quoting *Cochran*, 651 A.2d at 864). Second, and as implied by the first, "an *insurer* may not use extrinsic evidence to contest coverage under an insurance policy." *Aetna Cas. & Sur. Co.*, 651 A.2d at 863 (emphasis in original); *see also Balt. Gas and Elec. Co. v. Comm. Union Ins. Co.*, 688 A.2d 496, 567 (Md. Ct. Spec. App. 1997) (emphasis in original) ("[T]he Court of Appeals has repeatedly made clear that an insurer may not introduce extrinsic evidence that would take the claim outside the policy's coverage, so long as the *allegations* in the tort suit raise the potentiality of coverage under the policy."). In sum, extrinsic evidence is implicated in a duty-to-defend dispute only if the Court cannot determine whether a duty to defend exists from the allegations and the policies, and even then, only to establish that a duty to defend exists. The present record does not establish that this limited circumstance will plausibly occur in this case.

### ii.    *Extrinsic Evidence not Required*

Indeed, "[i]t is Morabito's position that the allegations in the [Underlying Lawsuits] create the 'potentiality of coverage' since there are allegations of general negligence that are not excluded by the professional services exclusion relied upon by CNA." (ECF No. 11 at 2.) CNA's position is similar, as it argues that "this case is not about re-litigating tort issues that will be decided in the [Underlying Lawsuits] in Florida." (ECF No. 8 at 2.) A review of the Policies and of the allegations in the Underlying Lawsuits confirms that these positions appropriately frame the scope of this case.

As explained above, CNA's denial of a duty to defend stems from its view that the exclusion in the Policies denying coverage for injuries arising from Morabito's "rendering or

failure to render professional services" applies to the allegations in the Underlying Lawsuits. (*See* ECF No. 5-12 at 4–6.)[11] In Maryland, for an act to constitute a professional service:

> The act or service must be such as exacts the use or application of special learning or attainments of some kind. The term 'professional' in the context used in the policy provision means something more than mere proficiency in the performance of a task and implies intellectual skill as contrasted with that used in an occupation for production or sale of commodities. . . . In determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself.

*Utica Mut. Ins. Co. v. Miller*, 746 A.2d 935, 943 (Md. Ct. Spec. App. 2000) (quoting *Bank of Ca., N.A. v. Opie*, 663 F.2d 977, 9871 (9th Cir. 1981)). An exemplar complaint in the Underlying Lawsuits asserts various grounds that are arguably outside of this definition of "professional services." For instance, it is replete with allegations that Morabito not only failed to identify architectural issues at the Condominium, but also failed to adequately communicate those issues to the relevant stakeholders. (*See, e.g.*, ECF No. 5-8 at 159(f), (h), (i), (k)–(n), (q), (s).)[12] While the parties have not yet fully briefed the implications of these allegations, the allegations confirm that this question is likely to turn on the eight corners rule (so to speak, given the multiplicity of policies and underlying complaints), and not on extrinsic evidence because the allegations in the Underlying Lawsuits allege that Morabito was broadly negligent leading up to the collapse of the

---

[11] Although CNA's Complaint suggests that "[t]he CNA Primary Policies also contain other exclusions that bar coverage for the Underlying Lawsuits," it only identifies one additional exclusion. (Compl. ¶ 51.) Specifically, "Exclusion A (Expected or Intended Injury) further provides the insurance does not apply to bodily injury or property damages 'expected or intended from the standpoint of the insured.'" (*Id.* ¶ 30.) While an exemplar complaint in one of the Underlying Lawsuits alleges that Morabito's conduct was "negligen[t], careless[], gross[ly] negligen[t], reckless[], outrageous, [or] willful and wanton," that is insufficient to establish that there is no duty to defend. For a duty to defend to exist, "the underlying tort suit need only *allege* action that is *potentially covered* by the policy, no matter how attenuated, frivolous, or illogical that allegation may be." *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540, 544 (Md. 1996) (emphases in original). Given that negligence can be established under Florida law without a showing that the harm was intended by or even foreseeable to the tortfeasor, Exclusion A cannot alone definitively preclude a duty to defend the Underlying Lawsuits. *See Williams v. Davis*, 974 So. 2d 1052, 1056 (Fla. 2007) (explaining four required elements of negligence). Therefore, while Exclusion A may ultimately impact CNA's duty to *indemnify* Morabito based on the facts found in the Underlying Lawsuit, that Exclusion does not appear to impact whether CNA owes a duty to *defend* Morabito based on the allegations made in at least some of the Underlying Lawsuits.

[12] It also asserts negligence that appears to be predicate to the rendering of professional services, such as "[f]ailing to employ competent and sufficiently trained inspectors and engineers[.]" (ECF No. 5-8 at 159(j).)

Condominium. *See Marvin J. Perry, Inc. v. Hartford Cas. Ins. Co.*, 615 F. Supp. 2d 432, 434 (D. Md. 2009) (emphasis added) (explaining that "Maryland has historically and *typically* followed what is referred to by some commentators as 'the eight corners rule'" subject to limited exceptions for extrinsic evidence).

### iii.    No Extrinsic Evidence Proffered

Even if the Policies and pleadings are insufficient to establish or refute CNA's duty to defend, Morabito has provided no reason to believe that extrinsic evidence will be required to resolve this dispute.  As noted, extrinsic evidence is only permissible "where the underlying complaint 'neither conclusively establishes nor negates a potentiality of coverage.'"  *Walk v. Hartford Cas. Ins. Co.*, 852 A.2d at 106.  Importantly, the situation here—where the parties dispute whether the allegations fall within a policy exclusion—is not the sort of dispute where Maryland law countenances the use of extrinsic evidence.  Instead, "in case of doubt as to whether or not the allegations of a complaint against the insured state a cause of action within the coverage of a liability policy sufficient to compel the insurer to defend the action, *such doubt will be resolved in insured's favor*."  *Aetna Cas. & Sur. Co.*, 651 A.2d at 864 (emphasis in original).

The use of extrinsic evidence in duty-to-defend cases is limited to situations where an issue triggering coverage is not apparent from the face of the underlying complaint but "the insured shows [through extrinsic evidence] that there is a reasonable potential that the issue triggering coverage will be generated at trial."  *Walk*, 852 A.2d at 110.  This issue must "relate in some manner to a cause of action *actually alleged* in the complaint and cannot be used by the insured to create a new, unasserted claim that would create a duty to defend."  *Id.* (emphasis in original) (quoting *Reames v. State Farm Fire and Cas. Ins.*, 683 A.2d 179 (Md. Ct. Spec. App. 1996)). Supplementation of allegations through extrinsic evidence is also limited by the fact that, "an

insured cannot assert a frivolous defense merely to establish a duty to defend on the part of his insurer." *Aetna Cas. & Sur. Co. v. Cochran*, 651 A.2d at 866.

In short, for extrinsic evidence to be required to resolve CNA's duty to defend, Morabito would be required to come forward with evidence that it was negligent in some way that was not a professional service and that is not already alleged in the Underlying Lawsuits. Perhaps unsurprisingly, given its obvious disincentive to do so, Morabito has not proffered such evidence. Rather, it has merely suggested that, under Maryland law, "there is the possibility that the Court will consider extrinsic evidence to assist in making [the duty-to-defend] determination[,]" and that "[a]ccordingly, it is possible that there will need to be some litigation of the tort issues in the underlying tort lawsuits to determine if the plaintiffs are pursuing both claims of professional and general negligence." (ECF No. 11 at 2–3.) This speculative concern is insufficient, as entanglement concerns cut in favor of abstention only when "potential entanglement between the state and federal courts [is] a *genuine possibility*." *Kapiloff*, 155 F.3d at 494 (emphasis added).

In sum, both sides present position is that the duty-to-defend dispute can be resolved on the terms of the Policies and the pleadings in the Underlying Lawsuits. It is well established that this sort of "eight corners" resolution does not create a sufficient risk of entanglement between federal and state courts to justify abstention. *See Penn-Am. Ins. Co.*, 368 F.3d at 412–414. While Maryland law creates the theoretical circumstance of factual entanglement between this case and the Underlying Lawsuits, on the record before the Court, such entanglement is not a "genuine possibility." *Kapiloff*, 155 F.3d at 494. Rather, considering the "particular circumstances of [this] case," the risk of entanglement between this Court and the Florida courts is *de minimis*, and insufficient to justify declining jurisdiction. *VRCompliance*, 715 F.3d at 573.

**4. Procedural Fencing**

Like entanglement, concerns about "procedural fencing" do not cut strongly in favor of either retaining or declining jurisdiction over this case. The fourth *Kapiloff* factor concerns whether a party is using a lawsuit not to resolve a substantive issue, but "merely as a device for procedural fencing." *Great Am. Ins. Co. v. Gross*, 468 F.3d 190, 212 (4th Cir. 2006). For example, a party engages in procedural fencing where the goal of its lawsuit is "to provide another forum in a race for res judicata or to achieve a federal hearing in a case otherwise not removable." *Ind-Com Elec. Co.*, 139 F.3d at 422. Similarly problematic is where "a party has raced to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." *Winchester Homes*, 15 F.3d at 380. None of these concerns are present here.

Morabito argues that this Court should abstain because CNA has engaged in procedural fencing by "rac[ing] to federal court in an effort to get certain issues that are already pending before the state courts resolved first in a more favorable forum." (Mot. Dismiss Mem. Supp. at 19 (quoting *Allstate Ins. Co. v. Powe*, Civ. No. CCB-19-1376, 2020 WL 1159000, at *5 (D. Md. Mar. 20, 2020)).) CNA rejoins that it is Morabito that has engaged in procedural fencing by "fil[ing] the competing Florida Coverage Action *after* CNA filed this action in an attempt to manufacture a problem that would prevent this action from going forward." (ECF No. 8 at 18 (emphasis in original).) In light of the positions the parties have taken in this case, the Court concludes that neither has engaged in the sort of "procedural fencing" that is condemned by *Kapiloff*.

At the time CNA filed this declaratory judgment action, there was no parallel state litigation seeking determination of the coverage issues presented in this case. The Fourth Circuit has explained that declaratory judgment actions seeking determinations of coverage owed in parallel tort litigation are "entirely proper effort[s] to obtain prompt resolution of a dispute over a liability

insurer's obligation to its insureds" and do not raise concerns about procedural fencing, as the insurance issues are "separate and independent from the ongoing [tort] litigation in [ ] state court." *Great Am. Ins. Co.*, 468 F.3d at 212.

While Morabito's decision to file a second lawsuit seeking determination of the same issues may initially be more questionable, the positions taken in its Motion to Dismiss dissipate concerns of mere procedural fencing. In Morabito's view, this Court is not merely *able* to dismiss this dispute under *Kapiloff*, it *must* do so under Federal Rule of Civil Procedure 12(b)(7) given the inability to join the indispensable Rule 19 Parties. (*See* Mot. Dismiss Mem. Supp. at 7–15); *see also supra* Part III.A. Consistent with that view, Morabito filed a lawsuit that included all parties that were necessary—in its view—to effectively resolve the insurance coverage dispute in the appropriate forum. While a decision by Morabito to continue litigating the Florida Coverage Action may raise concerns of procedural fencing, given this Court's decision to decline dismissal under 12(b)(7), such concerns seem more properly presented to the Florida state court for consideration. That said, it would be inappropriate to retroactively impute "procedural fencing" to the filing of a lawsuit that was, when filed, intended to remedy a perceived flaw in this litigation rather than "to [merely] provide another forum in the race to res judicata." *Great Am. Ins. Co.*, 468 F.3d at 212.

Each side filed the lawsuit that it believed was appropriate given its view as to the scope of this dispute. CNA believes this dispute is narrow, between itself and Morabito regarding CNA's duties under a Maryland contract. Morabito, in contrast, believes that the Association and the Victims are indispensable parties to this dispute, meaning that the dispute cannot be litigated in Maryland. To the extent there is fencing in this case, it is substantive. Accordingly, the final

*Kapiloff* factor does not cut strongly in favor of retaining jurisdiction or abstaining in light of the parallel state court litigation.

### 5. Conclusion Under the Kapiloff *Factors*

To recapitulate, in determining whether to retain jurisdiction over a declaratory judgment action where there exists a parallel proceeding in state court, "the first suit should have priority, absent the showing of balance of convenience in favor of the second action." *VRCompliance LLC*, 715 F.3d at 573. Here, the *Kapiloff* factors provide no reason to depart from the general preference for the first-filed case. *Id.* Indeed, the relative efficiencies of having a dispute regarding a Maryland contract resolved by a Maryland federal court rather than a Florida state court bolster the case for this Court's retaining jurisdiction. The remaining factors are insufficient to alter this conclusion.

First, Florida has no interest at all in the interpretation of a Maryland contract under Maryland law. Second, the fact that the insurance dispute is largely contingent on findings of liability in the Underlying Lawsuits mitigates, if it does not eliminate entirely, the risk of entanglement between this Court and the Florida state courts. Last, the Court cannot conclude that either party has engaged in improper "procedural fencing" that would warrant disqualifying its efforts to secure what it believes is the appropriate forum for this dispute.

The Court appreciates that the preference for the first-filed suit may unduly tilt the forum selection in this sort of insurer-insured disputes. As this case exemplifies, the insurer is likely (if not certain) to have the first-mover advantage by virtue of the fact that it decides if and when to decline coverage for a particular claim. (*See* Compl. (filed on August 4, 2021); ECF No. 5-12 (declination letter issued August 4, 2021).) That said, consideration of the *Kapiloff* factors confirms that this Court is not only the first court to hear this coverage dispute, but also the better

33

positioned court to resolve the questions currently presented, i.e. whether the Policies—issued in

Maryland and governed by Maryland law—create an obligation for CNA to defend Morabito in

the Underlying Lawsuits. Thus, further analysis of the propriety of the presumption in favor of

the first-filed suit is not required in this case. Accordingly, the Court will retain jurisdiction over

this matter under its discretionary authority pursuant to the Declaratory Judgment Act, 28 U.S.C.

§ 2201.

### C. Discretionary Stay

Morabito also moves for a discretionary stay of this case pending resolution of the parallel

Florida Coverage Action. (Mot. Dismiss Mem. Supp. at 21.) As an initial matter, it suggests that

"[t]he *Kapiloff* factors render this request proper." (*Id.*) Given this Court's conclusion that the

*Kapiloff* factors favor retaining jurisdiction, it sees no reason that they would nonetheless support

staying this case. Further, because "the circumstances permitting the dismissal of a federal suit

due to the presence of a concurrent state proceeding for reasons of wise judicial administration are

considerably more limited than the circumstances appropriate for abstention[,]" the Court's

conclusion under *Kapiloff* weighs strongly against a stay. *Moses H. Cone Mem. Hosp. v. Mercury

Const. Corp.*, 460 U.S. 1, 15 (1983).[13]

Despite this, Morabito argues that traditional equitable considerations, i.e., "'the interests

of judicial economy, the hardship and equity to the moving party in the absence of a stay, and the

potential prejudice to the non-moving party in the event of a stay'[] also weigh in favor of granting

---

[13] While granting a stay would not formally dismiss this case, that would be the functional effect, given that preclusion principles would render the adjudication of the coverage claims in Florida dispositive of this matter. *See Topps v. State*, 865 So. 2d 1253, 1255 (Fla. 2004) ("The doctrine of res judicata bars relitigation in a subsequent cause of action not only of claims raised, but also claims that could have been raised."); *see also Kremer v. Chemical Const. Corp.*, 456 U.S. 461, 481–82 (1982) ("It has long been established that [28 U.S.C.] § 1738 does not allow federal courts to employ their own rules of res judicata in determining the effect of state judgments. Rather, it goes beyond the common law and commands a federal court to accept the rules chosen by the State from which the judgment is taken.").

a stay here." (Mot. Dismiss Mem. Supp. at 21 (quoting *Landress v. Tier One Solar LLC*, 243 F. Supp. 3d at 646).) It suggests that all three factors tip in favor of a stay based on the existence of the parallel Florida litigation and the resulting inefficiencies and burdens produced by litigating the same issue in two courts. (*Id.*) This view fails to acknowledge that "any resulting injuries suffered by Plaintiffs from parallel suits will have been self-inflicted," as the maintenance of the Florida Coverage Action would be Morabito's own prerogative. *Rogers v. Dow Agrosciences, LLC*, Civ. No. JLK-06-0015, 2006 WL 2975725, at *4 (W.D. Va. Oct. 16, 2006). Similarly, the judicial economy concerns are as easily resolved by dismissing (or staying) the Florida Coverage Action as by granting a stay here. In short, these sorts of manufactured equities do not make out the "clear case of hardship or inequity in being required to go forward" that would warrant a stay of these proceedings. *Landis*, 299 U.S. at 255.

For the foregoing reasons, CNA's declaratory judgment action will move forward in this Court. First, neither the Association nor the Victims are necessary parties under Federal Rule of Civil Procedure 19. Their interests under the Policies are either collateral to this matter or turn on the disposition of the Underlying Lawsuits. Importantly, although the interests of the Rule 19 Parties are contingent on future events, they are also presently protected by Morabito's clear intent to litigate to maximize coverage under the Policies.

Second, the *Kapiloff* factors favor the continued exercise of jurisdiction by this Court. Though the Underlying Lawsuits create a constellation of *potential* insurance disputes, the only one that is presently ripe pertains to CNA's duty to defend Morabito in the Underlying Lawsuits. This Court is not only the first to be presented with that question, but is also the best positioned to resolve the interpretation of Maryland contracts under Maryland law.

35

Third, equitable considerations do not warrant a stay. To conclude otherwise would functionally subvert the *Kapiloff* analysis. Although litigating both this case and the Florida Coverage Action create undue burden and inefficiency, those concerns can be resolved by either dismissing or staying the portions of the Florida Coverage Action that overlap with this case.

In sum, CNA filed this declaratory judgment in Maryland to resolve a dispute between it and a Maryland company, arising from a Maryland contract subject to Maryland law. The various doctrines Morabito invokes to nonetheless have this matter resolved in the Florida Coverage Action are fact- and case-specific. On these facts and in this case, they do not warrant dismissal, abstention, or a stay in this matter.

### IV.    *Conclusion*

For the foregoing reasons, an Order shall enter denying Morabito's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(7), Decline Jurisdiction, or Stay (ECF No. 5).

DATED this ____2____ day of February, 2022.

BY THE COURT:

James K. Bredar
Chief Judge

36